STATE OF NORTH DAKOTA, on Relation of WILLIAM LANGER, Attorney General, Appellant, v. GAMBLE-ROBINSON FRUIT COMPANY, a Corporation, and the Stacy Bismarck Company, a Corporation, Respondents.

(9 A.L.R. 98, 176 N. W. 103.)

**Corporations — quo warranto lies to annul corporate franchises for unlawful combination to fix prices, notwithstanding other remedies.**

In a civil action brought by the attorney general, in which it is sought

to procure the cancelation of the corporate charters of the defendants, where the complaint alleges a combination of the defendants to control the price at which they will sell fruits and berries contrary to chap. 65 of the Penal Code, it is *held:*

1. The civil remedy in the nature of quo warranto to procure the annulment of corporate franchises for abuse of powers, which is provided in § 8004, Comp. Laws 1913, in the Code of Civil Procedure, is the ordinary common-law remedy through which the state might vindicate its sovereign rights, and it is not to be deemed superseded by a criminal remedy, or another civil remedy, in the absence of a clearly expressed legislative intention to that effect.

**Corporations — statutory forfeiture of corporate franchises on conviction of crime not exclusive remedy.**

2. Neither the absence of provision for a civil remedy in a penal statute prohibiting trusts, pools, and combinations, nor the provision in such penal statute making a judgment of conviction operate as a forfeiture of corporate franchises, sufficiently evidences a legislative intention to make the criminal remedy exclusive.

**Corporations — civil remedy to annul corporate franchises exists independently of criminal proceedings.**

3. The civil remedy provided by § 8004, Comp. Laws 1913, is not conditioned on a successful criminal prosecution under the penal statutes, and may be brought independently of criminal proceedings.

**Corporations — suit may be brought to annul corporate franchises for abuse of powers.**

4. Section 8004, Comp. Laws 1913, in the Code of Civil Procedure, authorizes a civil action by the attorney general for the annulment of corporate franchises for abuse of powers, and the alleged acts of the defendants constitute abuse of their corporate powers within subdivision 2 of the section.

**Corporations — misuse of franchise justifies civil remedy to annul franchise.**

5. Misuse of a corporate franchise constitutes abuse of powers justifying the application of the statutory civil remedy whenever the acts of misuse involve injury to the public, although the same acts may constitute a violation of a penal statute.

Opinion filed December 27, 1919.

---

NOTE.—On criminal prosecution as a condition of a civil action or proceeding for cancelation of a corporate charter for violation of law, see note in 9 A.L.R. 106.

For authorities discussing the question of forfeiture of corporate franchise, causes for and how enforced, see comprehensive note in 8 Am. St. Rep. 179.

Appeal from district court of Burleigh County, *Nuessle,* J. Reversed.

*William Langer,* Attorney General, and *Albert E. Sheets, Jr.,* Assistant Attorney General, (*S. L. Nuchols* and *Carmody, Louden, & Mulready* of counsel), for appellant.

A state has authority to forfeit the franchise of a domestic corporation, cancel the permit of a foreign corporation, or authority to do business in that state or to enjoin any corporation, foreign or domestic, from violating any of the laws of the state or exercising any franchise not conferred upon it by law. Hanger v. Com. 14 L.R.A.(N.S.) 683, and cases cited; Crawford Social Club v. Com. 14 L.R.A. (N.S.) 683; State v. Central Lumber Co. 42 L.R.A.(N.S.) 804; State ex rel. Young v. Standard Oil Co. 11 Minn. 85, 126 N. W. 527; State v. Drayton, 82 Neb. 254, 23 L.R.A.(N.S.) 1287, 117 N. W. 768; Waters-Pierce Oil Co. v. State, 106 S. W. 918, 212 U. S. 86; State v. Creamery Package Mfg. Co. 115 Minn. 207, L.R.A.1915A, 892, 132 N. W. 268; State v. Creamery Package Mfg. Co. 126 N. W. 126; State ex rel. Snyder v. Portland Natural Gas & Oil Co. 153 Ind. 483, 53 L.R.A. 413; People v. Northern River Sugar Ref. Co. 9 L.R.A. 33, and note. State ex rel. Watson v. Standard Oil Co. 49 Ohio St. 137.

It is the contention of the plaintiff that upon the allegations of the complaint, the court has authority to enjoin the carrying out by the defendants of the agreement alleged in the complaint. State v. Creamery Package Mfg. Co. 115 Minn. 207, L.R.A.1915A, 892, 132 N. W. 268.

*Fisk & Murphy,* for respondent Gamble-Robinson Co.

That a court of equity has no jurisdiction, unless expressly conferred by statute, to decree the dissolution of a corporation or the forfeiture of its franchises, either at the suit of an individual or at the suit of the state, is well settled. 7 R. C. L. 731, 740. See also the many cases cited in the note in 8 Am. St. Rep. at page 200. See also 5 Fletcher, Cyc. Corp. § 3234, and many authorities therein cited.

The state has an adequate remedy at law through proceedings in

the nature of quo warranto. 7 R. C. L. page 726, ¶ 734 and cases cited, id. 732.

*Murphy & Toner* and *Butler, Mitchell & Doherty,* for respondent Stacy Bismarck Co.

No action lies for the forfeiture of the defendant's franchises under the allegations of the complaint. Boyd v. United States, 116 U. S. 616; Counselman v. Hitchcock, 142 U. S. 547, 562.

And this court has held that the decisions of the Supreme Court of the United States are a guide for its decisions in interpreting this section of the Constitution. State v. Donovan, 10 N. D. 203, 86 N. W. 709; Re Beer, 17 N. D. 184, 115 N. W. 672.

No equitable relief by injunction, or other relief of any form whatever, can be granted in this action or on the allegations contained in the complaint. 17 Enc. Pl. & Pr. 386, 390, 482; 32 Cyc. 1412, 1415, 1463; 22 R. C. L. 656, 719.

BIRDZELL, J. This is an appeal from an order of the district court of Burleigh county, sustaining a demurrer to a complaint. The action is one by the attorney general to secure the cancelation of the corporate charters of the defendants and is brought pursuant to leave of court obtained upon an order to show cause why the leave should not be granted. The complaint alleges the official relation of the plaintiff as attorney general of the state; the corporate existence of each of the defendants; that each defendant is a wholesale fruit dealer, engaged in selling to retailers in territory tributary to the city of Bismarck; and then, in paragraph 4 the allegations upon which the sufficiency of the complaint depends are set forth as follows:

"That in the year 1913, the defendants formed a pool, trust, and combination for the purpose of fixing a standard for the price, and fixing the price at which, fruits and berries should be sold by said defendants to the trade and to the public, and by which defendants agreed between themselves to establish, agree upon, and settle the price each week, or oftener, at which fruits and berries sold by defendants should be sold to retail dealers and to the public, and in pursuance of such combination and agreement, representatives of each of the defendant

corporations met together once each week and agreed together to sell fruits and berries to the retail trade and to the public at a certain price during the ensuing week according to a card or price list agreed upon by said defendants; and said defendants have ever since the summer of 1913 continued to combine and agree together for the purpose of fixing the price at which fruits and berries should be sold by said defendants to the retail trade and the public in the city of Bismarck and the territory tributary thereto, and since said last mentioned date, representatives of said defendants have regularly met together from time to time and agreed upon and fixed the price, and arranged a card and price list according to which said defendants should sell fruits and berries to the retail trade and the public, and said defendants still continue said pool, trust, and combination for the purpose of fixing the price at which fruits and berries shall be sold by defendants to the retail trade and the public, in the city of Bismarck and the territory tributary thereto, and in pursuance of said pool, trust, combination, and agreement for fixing prices, neither of said defendants will sell fruit or berries at any other price than the price agreed upon by said defendants, and each of said defendants, pursuant to said agreement sells fruits and berries at identically the same price in the same territory, and preclude and prevent a free and unrestricted competition between themselves in the sale of fruits and berries to the retail trade and to the public in the city of Bismarck and the territory tributary thereto, in violation of chapter 65 of the Penal Code Compiled Laws, State of North Dakota, for the year 1913."

A general demurrer was sustained to the foregoing complaint and the matter is here upon appeal from the order.

The complaint must be considered in the light of the following provisions of law: Constitution, § 21: "The provisions of this Constitution are mandatory and prohibitory unless by express words they are declared to be otherwise." Constitution, § 146: "Any combination, between individuals, corporations, associations, or either, having for its object or effect the controlling of the price of any product of the soil or any article of manufacture or commerce, or the cost of exchange or transportation, is prohibited and hereby declared unlawful and against public policy; and any and all franchises heretofore granted

or extended, or that may hereafter be granted or extended in this state, whenever the owner or owners thereof violate this article, shall be deemed annulled and become void." Section 8004, Comp. Laws 1913, provides ". . . an action may be brought by the state, or by any private person in the name of the state, on leave granted therefor by the district court, upon cause shown for the purpose of annulling the existence of any corporation created by, or under the laws of this state, except a municipal corporation, whenever any such corporation shall:

"1. . . .

"2. Violate the provisions of any law by which such corporation shall have forfeited its corporate rights, privileges, and franchises by abuse of its powers."

The succeeding sections of the same article make provisions for the bringing of an action by an individual in case of the refusal of the attorney general, for notice to the corporation, for distribution of the corporate property to creditors, claimants, and stockholders following a judgment of dissolution; for the appointment of a receiver; for the payment of costs, for filing a copy of the judgment roll in the office of the secretary of state or the insurance commissioner (depending upon the kind of corporation), etc.

The substance of chapter 65 of the Penal Code requiring consideration may be stated as follows: It provides that those entering into prohibited pools, combinations, etc., shall be guilty of a misdemeanor; defines illegal combinations in such a manner as to bring the alleged acts of the defendants within its penal provisions and it provides as punishment the fining of the guilty corporation up to the maximum of $5,000 and fining and imprisonment, or both, of the guilty officers of the corporation. One of the sections (Comp. Laws 1913, § 9954) reads:

"Every domestic or foreign corporation authorized to do business in this state, which shall have been found guilty in any court of competent jurisdiction of violating any of the provisions of this chapter, is hereby denied the right of and prohibited from doing business in this state, and the charter, articles of incorporation or authority granted, authorizing such corporation to do business in this state, shall cease and become void, and it shall become the duty of the secretary

of state, upon the filing in his office of a certified copy of such judg-
ment, to immediately cancel the authorization or charter of such cor-
poration and give such corporation written notice of such cancelation."

It contains further sections rendering combinations and contracts
made in violation of the chapter void and not enforceable in law or
equity, excusing purchasers from liability to pay for commodities sold
in carrying out prohibited combinations, and authorizing the taking
of testimony by the attorney general upon notice. Injunction is also
authorized to prevent the corporation from disposing of or removing
its property during the pendency of suit unless a bond be given con-
ditioned for the payment of any judgment, fine, and costs that might
be adjudged in the action.

The principal contention of the defendants and respondents is that
the relief demanded cannot be decreed unless and until the respond-
ents are convicted criminally under the Penal Code. If this contention
be correct, the complaint does not state a cause of action. The conten-
tion is based primarily upon an interpretation of the statutory pro-
visions hereinbefore referred to in conjunction with a section (Rev.
Codes 1905, § 9231) which was passed in 1905 as a part of an act
dealing with trusts, pools, and combinations and which was omitted
from the act as amended and re-enacted by chapter 259 of the Session
Laws of 1907. The section, which was repealed by and omitted from
the 1907 Act, provided specifically that it should be the duty of the
attorney general, either upon his own motion, or upon complaint of
any aggrieved person, to institute a suit or quo warranto proceedings
to obtain the dissolution of the corporate existence of an offending
corporation. The argument is that the omission of this section, when
considered in connection with the provision hereinbefore quoted from
the 1907 Law (Comp. Laws 1913, § 9954) evidences an intention by
the legislature to do away with the civil remedy for dissolution and to
substitute therefor an automatic cancelation by virtue of a judgment
of conviction obtained in criminal proceedings and filed in the office
of the secretary of state. Whether or not this is the proper con-
struction of the laws pertaining to the forfeiture of corporate charters
for illegal combinations, constitutes the sole question for decision upon
this appeal; for it is manifest that the complaint states a cause of ac-

tion if civil proceedings not founded upon a criminal prosecution are possible under the law.

The right of the state to inquire civilly into the propriety of the continued exercise of a corporate franchise by those who are alleged to have misused it to the injury of the public has been recognized for centuries as an attribute of sovereignty, and the right of the attorney general to act for the state in such inquiry comes from the common law (Fletcher, Cyc. Corp. § 3241). This remedy, whether it be denominated a quo warranto proceeding, an information in the nature of quo warranto, or a civil action under § 7969, Comp. Laws 1913, is now recognized universally as being civil rather than criminal in its nature, and the right to proceed civilly generally exists independently of the right to prosecute criminally. Says Fletcher, Cyclopedia Corporations, vol. 5, § 3235:

"As has already been noted, quo warranto proceedings are usually considered civil in nature, and there is no merger of the civil liability in the criminal offense. A corporation may be proceeded against by quo warranto for a misuser or perversion of its franchise, although its officers and agents at the same time may be amenable to the criminal law for the offenses committed by them in the perversion of such franchises. Neither one of these proceedings is a bar to the other, and the corporation may be held to answer for its wrongful acts before its agents are tried and convicted of their guilty acts. For instance, it has been held that violators of an anti-trust act may be proceeded against by indictment or information, and the remedies by information and in equity, also exist."

The text of Cyc. is to the same effect. There it is said: "The right reserved by the legislature to repeal a charter which it has granted does not impair the right to proceed by quo warranto in case the legislature does not exercise its power, and it is no bar to quo warranto against a corporation for misusing its franchise that the acts constituting such misuser have rendered its officers criminally liable." 32 Cyc. p. 1417.

As to the presumption that the ordinary remedy by quo warranto is not superseded by a special statutory remedy, Cyc. further says (32 Cyc. p. 1417): "(2) In the absence of a constitutional prohibition,

the legislature has power to provide for remedies and thereby to supersede that by quo warranto, and an intention so to do, if clearly manifested, will be given effect, and the courts will recognize the statutory remedy as exclusive. Unless, however, the contrary intention clearly appears, the statutory remedy will be considered cumulative."

The text of Ruling Case Law supports the same principle (7 R. C. L. p. 711): "If a penalty is imposed for an act or omission, and the charter or statute imposing it does not expressly or by necessary implication deprive the state of the right to proceed for a forfeiture, then, on principle, such proceedings should not be cut off."

To turn to specific instances, where courts have held the civil remedy applicable though the acts complained of constituted violations of criminal statutes, see State ex rel. Atty. Gen. v. Capital City Diary Co. 62 Ohio St. 350, 57 L.R.A. 181, 57 N. E. 62; State v. Nebraska Distilling Co. 29 Neb. 700, 46 N. W. 155. In the former case the charter of the corporation was forfeited for the violation of a penal statute enacted to prevent fraud and deception in the manufacture and sale of oleomargarine. The statute contained no provision expressly authorizing the forfeiture of the charter. To the objection that the remedy by criminal prosecution was exclusive, the answer of the court was that the remedy was not adequate, and that the inadequacy of the criminal remedy was attested by practical difficulties in obtaining convictions. In the Nebraska case it was held, without reference to the anti-trust statute expressly authorizing cancelation of the charter, that a corporation entering into a contract in restraint of trade and commerce which was contrary to the policy of the common law rendered itself liable to the forfeiture of its charter in an original quo warranto proceeding. We deem the proposition to be fully established and well-grounded upon principle that the right of the state to proceed civilly to procure the forfeiture of a corporate charter for gross abuses of the franchise which are injurious to the public is not dependent upon the result of criminal prosecutions for the same wrongs, unless there is the clearest expression of the legislative intention to that effect.

From what is the legislative intention relied upon by the respondents in the case at bar to be deduced? The express direction to the attorney general to proceed by quo warranto, which formed a part of

the 1905 statute, was not made a part of the Act of 1907, and § 9954, Comp. Laws 1913, indicates that the filing of a copy of a judgment of conviction with the secretary of state, followed by notice, shall cancel the charter of the corporation. In short, the argument is that the implication resulting from the omission from the penal statute of express authority for a civil action, coupled with an apparent means of making a conviction operate automatically as a cancelation of the charter, evidences an intention to do away with the civil remedy which, prior thereto, had inhered in the state. We deem this argument untenable for two principal reasons:

1. The penal statute itself, as enacted in 1907, contains provisions, not theretofore existing in the statute, authorizing the taking of testimony and fixing the consequences of the failure of officers, agents, directors, and employees to testify, which consequences could only be visited upon the corporation in a civil action. While it is difficult to see why the legislature would make these sections part of a penal statute when they relate primarily to civil proceedings, nevertheless, such fact is a significant guide in determining intention where it is contended that the civil action was abolished. One of the added sections, too, provides for the issuance of an injunction to prevent the corporation during the pendency of "any action or suit" under "the provisions of this chapter" from disposing of or removing its assets or property from the jurisdiction. It is clearly intended that this section shall be employed in civil proceedings. Thus, there are expressions in the 1907 Act itself which are indicative of an intention to continue civil remedies. These, in our opinion, outweigh the negative implication.

2. The Code of Civil Procedure contains ample authority for the bringing of a civil action against a corporation for abuse of its franchise. And it should require something more than a negative implication derived from a penal statute to deprive the state of the civil remedy therein provided for. Section 8004, Code of Civil Procedure, is but the codification of the common-law doctrines according to which the state might vindicate its sovereign right to terminate any franchise granted by it when sufficient cause exists to justify its interference. It would be strange, indeed, if this civil proceeding were suspended entirely where the cause of forfeiture were made a penal offense.

44 N. D.—25.

Especially where the offense consists of such a public wrong as a combination to control prices, which is expressly inhibited in this state by constitutional provision. N. D. Const. § 146. If such were the situation, the result would be that the legislature has said that for the violation of minor regulatory provisions which are not even made penal, a corporate franchise may be forfeited in a civil action by the state, in which the state would only sustain the burden of proof by a preponderance of evidence; but for an offense so grave as to be made criminal, the franchise may not be forfeited unless the state has established guilt beyond a reasonable doubt in a criminal prosecution. Furthermore, by making the forfeiture dependent upon the outcome of a criminal prosecution it would be impossible to resort to evidence that might be available in a civil action; such, for instance, as depositions. We would be most reluctant to attach a construction to the statutes that would convict the legislature of intending such an inconsistent and unreasonable consequence.

In addition, the history of the legislation in this state on the subject of pools, trusts, and combinations, shows that though the Constitution forbids combinations to control prices and declares that for a violation of the provision corporate franchises "shall be deemed annulled and become void," express authority for civil proceedings was never made a part of any penal statute on the subject until 1905, and in the legislative session immediately following this provision was stricken out as hereinbefore noted. Thus, if the failure to expressly authorize in a criminal statute the forfeiture of the charter by civil proceedings makes the criminal remedy exclusive, the criminal remedy has been exclusive in this state since 1890, with the exception of the years 1905–1907. It is true that in some of these statutes an attempt was made to authorize special inquiry by the secretary of state looking toward the cancelation of corporate charters. But this summary method of cancelation by an executive officer has been held to be unconstitutional and could not take the place of a civil remedy for the same purpose. State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, 132 N. W. 769, Ann. Cas. 1913E, 1089. To us it seems more reasonable that the civil remedy provided in the Code of Civil Procedure has been available during all these years.

But it is argued that the commission of the criminal offense stated in the complaint does not amount to an abuse of corporate powers under subdivision 2 of § 8004. In the light of the authorities, we can see no merit in this contention. It will serve no good purpose to attempt a definition of the expression "abuse of its powers" as used in the statute, for there seems to be a general agreement that the commission of acts of the character alleged in the complaint in this case is entirely within any definition that might be attempted. For a case in point under an identical statutory provision, see People v. North River Sugar Ref. Co. 121 N. Y. 582, 9 L.R.A. 33, 18 Am. St. Rep. 843, 24 N. E. 834, 54 Hun, 355, 3 N. Y. Supp. 401. See also State v. Central Lumber Co. 24 S. D. 136–164, 42 L.R.A.(N.S.) 804, 123 N. W. 514; People v. Buffalo Stone & Cement Co. 131 N. Y. 140, 15 L.R.A. 240, 29 N. E. 947; Distilling & Cattle Feeding Co. v. People, 156 Ill. 448, 47 Am. St. Rep. 200, 41 N. E. 188; State ex rel. Crow v. Armour Packing Co. 173 Mo. 356, 61 L.R.A. 464, 96 Am. St. Rep. 515, 73 S. W. 645; State ex rel. Hadley v. Delmar Jockey Club, 200 Mo. 34, 92 S. W. 185, 98 S. W. 539; State ex rel. Hadley v. Standard Oil Co. 218 Mo. 1, 116 S. W. 902; State ex rel. Major v. International Harvester Co. 237 Mo. 369, 141 S. W. 672; State ex rel. Mason v. Springfield African Social & Improv. Club, 169 Mo. App. 137, 154 S. W. 458; State ex rel. Watson v. Standard Oil Co. 49 Ohio St. 137, 15 L.R.A. 145, 34 Am. St. Rep. 541, 30 N. E. 279; State ex rel. Snyder v. Portland Natural Gas Co. 153 Ind. 483, 53 L.R.A. 413, 74 Am. St. Rep. 314, 53 N. E. 1091.

Morawetz states the rule as follows (2 Morawetz, Priv. Corp. § 1024) : "A corporation may incur a forfeiture of its franchises by the doing of an illegal act. Any act of a corporation which is forbidden by its charter, or by a general rule of law, and strictly every act which the charter does not expressly or impliedly authorize the corporation to perform, is unlawful; and, if the doing of such act is an injury to the public, it may be sufficient ground for declaring a forfeiture." 5 Fletcher, Cyc. Corp. § 32; 2 Cook, Corp. 6th ed. § 633; 5 Thomp. Corp. §§ 6627 and 6628; 7 R. C. L. 726.

The underlying principle of all of the authorities above cited has been well stated in the case of State ex rel. Hadley v. Delmar Jockey

Club, 200 Mo. 34, 98 S. W. 539, supra. It is there said (page 68):
". . . When a corporation receives from the state a charter grant-
ing certain franchises or rights, there is at least an implied or tacit
agreement that it will use the franchises thus granted; that it will use
no others, and that it will not misuse those granted. A failure in any
substantial particular entitles the state to come in and claim her own—
the rights theretofore granted—and this through a judgment of for-
feiture in a proceeding like the one at bar."

After discussing nonuser as a ground for forfeiture, the court pro-
ceeds (page 71): ". . . Misuser is likewise a violation of the im-
plied agreement with the state. So is usurpation. Each are but vio-
lations of the implied contract with the state, and for these violations
we declare forfeitures. . . . The gist of each in quo warranto is
the wilful violation of the rights of the state under the implied con-
tract, and not the violation of some criminal law, for we do not try
criminal cases and affix criminal punishments in quo warranto pro-
ceedings. The violation of the corporation's contract with the state by
misuser or usurpation may be evidenced by the fact of the violation
of some statute criminal in character, but in this kind of proceeding
we try the right of the corporation to further hold the right of its
franchises, not the question of finding its guilt or innocence under the
statute and fixing punishment by the statute."

But it is argued that the expression "abuse of its powers," as used
in the statute, can only refer to acts that the corporation is enabled
to do because it is a corporation, or because of some special power
given to it which it has abused. If this argument has not been suffi-
ciently answered above, we need only add that such a construction ap-
peals to us as highly technical and unreasonable. One of the most
valuable privileges of the corporation is its right to do business with
the public, and this right it enjoys in common with individuals who
may do business on like terms. But yet it is only by virtue of the
franchise granted that the corporation secures the right to do business
as an artificial entity. So, whatever a corporation does in exercising
the franchise to do business it does by virtue of the power which the
state has conferred upon it, whereas the similar right of individuals
is not so derived. The provisions of the Constitution and of the

statute, as well as the common law of the state, in so far as they affect the manner in which corporations may conduct their business, form the terms of the implied contract upon which the corporate franchise is granted, and therefore enter into the franchise itself. When the corporation breaks this contract in such a way as to work injury to the public, the state has a right to institute an inquiry into the extent of the abuse of the powers granted by it, and, in proper cases, to annul the franchise for the abuse. Even if the view be taken that the acts complained of are ultra vires, forfeiture might still be adjudged. State v. Nebraska Distilling Co. 29 Neb. 700, 46 N. W. 155.

To the suggestion that the acts alleged in the complaint do not show grave offenses against the public interests or a sufficient turning aside from the purposes for which the defendant corporations were organized to justify action by the state, it need only be replied that the acts alleged have been thought by both the constitutional convention and the legislature to be sufficiently grave to call for the application of the remedy sought.

For the foregoing reasons the order appealed from is reversed.

CHRISTIANSON, Ch. J., and ROBINSON, J., and ALLEN, District Judge, concur.

GRACE, J., concurs in the result.

BRONSON, J., disqualified did not participate. Honorable FRANK P. ALLEN, Presiding Judge of Third Judicial District sitting in his stead.