*584
 
 Marshall, C. J.
 

 This cause invokes the original jurisdiction of this court in
 
 quo warranto,
 
 to inquire into the alleged misuse of the corporate franchises, privileges, and rights of the defendant, an Ohio corporation. The petition alleges that the defendant is an Ohio corporation, “organized for the purpose of erecting, maintaining, leasing, and operating grounds, parks, speedways, and courses for the purposes of recreation and amusement, and for holding meets, contests, and races with horses and vehicles, and acquiring lands by purchase, lease, or otherwise therefor.” The petition further alleges that defendant has acquired and now controls certain grounds, structures, and buildings in Warrensville township, Cuyahoga county, Ohio, for the purposes aforesaid, and that it has in the past and will in the future hold racing meets on the premises. The petition further alleges:
 

 “In connection with the racing meets theretofore held on said ground, has used, and in the future will use, unless otherwise controlled by the order of this court, at each of said racing meets hereafter to be conducted on said grounds, and in connection with said meets and on said grounds, apparatus, books, papers, and other devices for recording wagers and selling pools upon the result of trials and contests of speed and power of endurance of horses; and defendant, being the occupant and in possession of said grounds and the buildings thereon erected, and the race tracks constructed in connection therewith, knowingly has permitted, and in the future will permit, the same to be used and occupied for the purposes of keeping thereon, exhibiting thereat and employing in
 
 *585
 
 connection therewith, devices and apparatus for recording said wagers and for selling said pools; and defendant has in the past acted, and in the future will act, as the custodian and depositary for hire and reward of money staked, pledged, and wagered upon the result of said trials and contests of speed and power of endurance of said horses; and defendant has in the past permitted, and in the future will permit and encourage, on said grounds and in said buildings, the making of bets for money, gambling, and wagering, all of which has been, and if continued will be, in violation of the Constitution and the statutes of the state of Ohio in such cases made and provided.”
 

 The petition further states in detail the methods by which the defendant acts as the custodian of moneys wagered, determines the results of the wagers, and makes payment of the money to the persons who have won upon such wagers. .It is further alleged in the petition that the racing meets so conducted are of approximately three weeks duration, and that during each day of such racing meets hundreds of persons are there assembled for the unlawful purposes aforesaid. It is further alleged that, unless prevented from so doing, the defendant will continue to misuse its franchises, and that said violations are “willfully, habitually, and persistently pursued in defiance of law. ” The petition prays that the court may find ifie defendant has misused its franchises, and that a judgment of ouster be entered.
 

 To this petition the defendant demurs, upon the ground that the allegations thereof do not constitute a cause of action. In support of the de
 
 *586
 
 murrer, defendant’s counsel urge that
 
 quo warranto
 
 is not a proper remedy, and further that, upon the allegations of this petition, the relator is not entitled to the relief prayed for.
 

 Quo warranto
 
 is a high prerogative writ, and, while the Constitution confers upon this court jurisdiction in
 
 quo warranto,
 
 it must be recognized that, so far as this writ is invoked in seeking to oust corporations from their franchises, the breadth of the jurisdiction and the manner of its exercise must depend upon legislation. That provision of the General Code which defines and regulates the breadth of the powers of the courts in
 
 quo warranto,
 
 as applied to corporations, is Section 12304, which provides as follows:
 

 l^“A like action may be brought against a corporation:
 

 “1. When it has offended against a provision of an act for its creation or renewal, or any act altering or amending such acts;
 

 “2. When it has forfeited its privileges and franchises by nonuser;
 

 “3. When it has committed or omitted an act which amounts to a surrender of its corporate rights, privileges, and franchises;
 

 “4.
 
 When it has misused a franchise, privilege, or right conferred upon it by law, or when it claims or holds by contract or otherwise, or has exercised a franchise, privilege, or right in contravention of law.” ^
 

 Thát paragraph which has particular application to the present case is paragraph 4. The allegations of the petition, which charge that this defendant has violated the criminal laws of the state, have
 
 *587
 
 followed the language of Section 13062
 
 et seq.,
 
 of the Ohio Criminal Code, which need not be repeated.
 

 In Section 12324, General Code, it is provided:
 

 “When it is found and adjudged in such case, that a corporation has offended in a matter or manner which does not work such surrender or forfeiture, or has misused a franchise, or exercised a power not conferred by law, judgment shall be entered that it be ousted from the continuance of such offense or the exercise of such power.”
 

 It will be seen, therefore, that the courts are invested with a wide range of power in the regulation and discipline of Ohio corporations. It is conceded by counsel for the defendant in this case that the General Code constitutes the authority for invoking the writ of
 
 quo warranto
 
 in inquiring into corporate franchises and the manner of their exercise, and that the Legislature has the power to thus provide the mode and manner of- exercise. \'It is well-established that it is not every insignificant act of either misuser or nonuser which will justify an order of forfeiture of all the franchises of a corporation, and that the courts should only act in those cases where the acts or omissions are of a public nature, or in which the public has an interest. It has been urged in argument, and we agree, that the court should move cautiously in forfeiting corporate franchises, and should only base its decree upon matters which are of the essence of the contract between the state and the corporation.'j
 

 The question arises in the instant case upon a demurrer to the petition. All the well-pleaded
 
 *588
 
 allegations of the petition must be. taken as confessed, for the purposes of this inquiry, to be true. Without repeating those allegations, it is sufficient to say that it is charged that this corporation, through its officers and agents, and upon its own premises, has willfully, habitually, and persistently acted in defiance of law. The various acts of the defendant hereinbefore enumerated definitely and specifically allege acts which clearly constitute violations of the statutes against gambling, wagering, selling pools, and allege that all such acts are performed by defendant’s agents and servants upon defendant’s premises and with defendant’s knowledge. There are many sections of the Criminal Code of Ohio defining and penalizing the various forms of gambling, but Section 13062, which is the one section more particularly alleged to be violated by this defendant, is one which is closely related to and growing out of the very purposes for which the defendant has been incorporated and organized. It would therefore be difficult to conceive of a stronger case for the application of the principles contended for by the Attorney General. It is not only a clear, unauthorized use of the property of the defendant, which was ostensibly certified for a lawful use, but that unauthorized use is a violation of the criminal laws of the state, and those criminal purposes are those which the Legislature has recognized as an evil most likely to be incidental to and growing out of contests of speed or endurance, which the Legislature has therefore taken the unusual precaution of making a subject of special definition and penalty.
 

 
 *589
 
 It is well settled that courts of chancery will not employ the extraordinary writ of injunction to prevent the commission of crimes and misdemeanors, and that they will not permit the employment of the writ of mandamus to compel public officials to observe their oaths of office and enforce the criminal laws of the state, but the same principle does not necessarily apply to the employment of the writ of
 
 quo warranto.
 
 If the Legislature should provide a special statute authorizing the employment of injunction and mandamus in the enforcement of criminal procedure, no reason is perceived why such statute should be held to be invalid or unconstitutional or why the courts should refuse or even hesitate to act in obedience to such legislative mandate. It has already been seen that
 
 quo warranto
 
 is regulated by statute, and such authorization must necessarily be a valid exercise of legislative power in relation to corporations, which can only exist by virtue of the same legislative authority. The Legislature of Ohio having made the most' ample provision, we are unable to find any reason why the courts should tíeglect or refuse to follow those provisions, and we can see the most potent reasons why those statutes should be followed by the courts.
 

 A corporation in Ohio is incorporated and organized under general láws, and the articles of incorporation constitute its charter. A corporation must first submit such articles to the secretary of state, and secure the approval of the secretary of state before proceeding to organize. The corporation may do only those acts set forth in such articles as constitute its authorized purposes. Any
 
 *590
 
 acts beyond those authorized are not only unauthorized but unlawful. The articles of incorporation constitute a contract with the state that the corporation will use and not abuse or misuse the rights and privileges granted, and there is a further obligation, implied if not expressed, that the artificial being thus created will not go beyond the powers granted and attempt to exercise other rights and privileges not granted. The Constitution of 1851 provides that all corporations shall thereafter be organized under general laws, and all such laws be subject to amendment or repeal. A corporation in Ohio has therefore a very precarious tenure, and the contract thus entered into, while at all times binding upon the corporation, is all the time subject to revocation by amendment or repeal of the statute under which it is incorporated and organized. A corporation has been defined in the celebrated
 
 Dartmouth College case,
 
 4 Wheat., 518, 4 L. Ed., 629, as “an artificial being, invisible, intangible, and existing only in contemplation of law.” Being the creature of law, it must at all times be subject to the lawmaking power of the authority which created it, and this is especially true in Ohio since 1851. The same legislative power which permits the incorporation of persons and capital for the purpose of conducting parks and speedways, and holding contests and races with horses and vehicles, has placed certain well-defined limitations upon the manner of conducting such contests, has attempted to surround such contests with a proper moral atmosphere, and has forbidden and penalized all forms of gambling in connection therewith.
 

 
 *591
 
 It is true that all such statutes are not found in the same chapter, or even under the same title, but it is equally true that they all relate to the same subject-matter. Regardless of the peculiar character of the misuser of this, particular corporate franchise, it is like all other corporate franchises in being required to keep within the letter and spirit of the law of its incorporation.
 

 It has been stated in argument that the articles of incorporation of this defendant do not authorize gambling, and that there can therefore be no forfeiture of the right to gamble. This argument does not meet the situation. The law permits a corporation to be organized for a certain lawful purpose, and has prescribed that the doing of other acts which usually accompany the execution of that purpose are criminal and subject to punish^ ment. The corporation itself can only exist under the sovereignty of the state, and, if that sovereignty is powerless to compel the good behavior of the creature of sovereignty, then sovereignty itself becomes a mockery, and deserves the contempt and disrespect into which it has fallen.
 

 It is further stated in argument that it would create a dangerous situation to permit all the franchises of the state to be made subject to the discipline of the Attorney General, and that, if the writ of
 
 quo warranto
 
 should be allowed in this case, even under the limited provisions of Section 12324, every attempted exercise of unauthorized power on the part of any corporation, or any misdemeanor committed by the agents* and servants of any corporation, would subject such corporation to the judicial inquiry of
 
 quo warranto,
 
 [it may
 
 *592
 
 be answered that the Attorney General of the state is the only official who has the right to invoke the inquiry, and that it will be presumed that that official, responsible as he -is to the people who elected him to office, will always be of that character who would not use his office for purposes of Oppression, and that he would only invoke the processes of the court in
 
 quo warranto
 
 where there was a flagrant violation of corporate franchises, in which the interests of the public were directly and seriously involved.
 
 S
 
 The decisions of the state of Massachusetts indicate that the Legislature of that state has made provision for indictment of a corporation which exceeds its powers. No such provision is made in Ohio. A corporation may not be indicted as a felon, or punished as such. The Legislature has seen fit to make only one provision for inquiry into the proper exercise of corporate franchises, and that is by the writ of
 
 quo warranto.
 
 'If the courts shall hold that this writ is not available, then it must be admitted that corporations are subject to no official supervision, and that they are free to abuse and misuse their franchises and to exercise those acts not permitted without penalty or restraint.
 

 If it shall be held by the courts that
 
 quo warranto
 
 only permits the forfeiture of those powers expressly granted, and that the courts may not take into consideration the unlawful exercise of powers granted, or the exercise of powers not granted at all, then it must be apparent, upon the most superficial examination of the question, that
 
 quo warranto
 
 would never lie against a corporation.
 

 Corporations owe their existence to the written
 
 *593
 
 laws of the state. They are organized under general laws, and may he regulated, and their existence may be terminated in accordance with general laws and by means of processes provided by general laws. One of those general laws is Section 12304, which provides for the manner of inquiry into the conduct of the corporation in the pursuit of its franchise powers, and this statute must be held to be quite as effective as the other laws which bring the corporation into being. It is argued that it is a serious and drastic thing to forfeit a corporate charter. It may be answered that it is a serious thing to “willfully and, habitually, and persistently” violate the penal laws of the state, and to conduct the corporate business “in defiance of law.” Such flagrant and defiant disrespect and contempt for the laws of the state justify drastic action, when they are proven, or when they are admitted, as the demurrer admits the charges in the instant case.
 

 We have heretofore discussed this case upon principle, and we will now pay some attention to the authorities. In the case of
 
 State ex inf. Hadley
 
 v.
 
 Delmar Jockey
 
 Club, 200 Mo., 34, 92 S. W., 185, 98 S. W., 539, a corporation was authorized to conduct a county fair, and, among other powers, was authorized to conduct exhibitions of contests of speed and races between horses. It did not at any time conduct the agricultural enterprise, but did conduct speed contests, and as a part of such speed contests engaged in bookmaking and poolselling and other forms of gambling. Thereupon
 
 quo warranto
 
 was instituted on the ground of nonuser and misuser of the corporate franchise. The
 
 *594
 
 information was sustained on both charges. Upon the subject of misuser, the third paragraph of the syllabus states as follows:
 

 “A
 
 corporation may be ousted of its franchises for a violation, through its officers or employes, of the criminal law, although such violation is a felony, and such officers or employes have not been convicted or indicted therefor. A corporation as such cannot commit a felony, for there can be no felony without a criminal intent; but the officer of a corporation, in charge of its affairs, may as such do that which the statute declares to be a felony, in like manner as he may do that which the statute declares to be a misdemeanor, and a commission of that felony by such officer is a ground for ousting the corporation of its franchises, as for a misuser or perversion thereof, in like manner as it would be were the act a misdemeanor.”
 

 That case is even stronger than the instant case, because the laws of Missouri contain no provision similar to the provisions of Sections 12304 and 12324, of the Ohio General Code. The authority for the
 
 quo warranto
 
 proceeding in Missouri rested entirely upon principles of common law. That case was similar to the instant case, in that the violations of law were incident to and growing out of the property and facilities of the corporation, which the corporation was authorized to lawfully own and operate.
 

 In the case of
 
 State ex rel. Dawson, Atty. Gen.,
 
 v.
 
 Anthony Fair Ass’n.,
 
 89 Kan., 238, 131 P., 626, Ann. Cas., 1914D, 361, an information in
 
 quo warranto
 
 was filed against an association which was incorporated to conduct county fairs and race meet
 
 *595
 
 ings, and to own real estate and personal property incident to such purposes. Fairs and race meetings were in fact held, but as a part of the race meetings it was found that, “by and through its officers, servants, and agents, and by the consent of its directors and managers” various forms of gambling were permitted and conducted, and the court declared the following official syllabus:
 

 “2. A fair association, chartered by the state under authority of the statute to form private corporations for the encouragement of agriculture and horticulture, has no right or authority to sell the privilege of using its buildings for pool selling and bookmaking, and such association will, at the suit of the state, be ousted from the exercise of such power.
 

 “3. The state which gave such an association its corporate life may require it to refrain from conduct clearly against good morals and which ordinarily constitutes a crime; and such association cannot demand that the courts enter upon a critical examination of the effect and validity of statutes passed for the general purpose of suppressing gambling in order to remove the seal of condemnation. ’ ’
 

 If the state of Kansas has any special statute authorizing proceedings in
 
 quo warranto
 
 against a corporation for misuser of its franchises, the opinion does not disclose the same.
 

 The Supreme Court of North Dakota, in
 
 State ex rel. Langer
 
 v.
 
 Gamble-Robinson Fruit
 
 Co. 44 N. D., 376, 176 N. W., 103, sustained a forfeiture of the franchise of a corporation organized to conduct a wholesale fruit business, on the ground
 
 *596
 
 that the corporation had entered into a combination with other corporations in violation of the anti-trust laws of the state. The laws of North Dakota make provisions similar to the Ohio statute, Section 12304, for making inquiry into the conduct of the corporations of the state, and it was there held that the civil remedy thus provided is not conditioned on a successful criminal prosecution under the penal statutes, and that a civil suit in
 
 quo warranto
 
 may be brought independently of criminal proceedings. It was stated in an official syllabus:
 

 “Misuse of a corporate franchise constitutes abuse of powers justifying the application of the statutory civil remedy whenever the acts of misuse involve injury to the public, although the same acts may constitute a violation of a penal statute.”
 

 The Appellate Court of Indiana, in
 
 State ex rel. Voyles
 
 v.
 
 French Lick Springs Hotel Co.,
 
 42 Ind. App., 282, 82 N. E., 801, held that a hotel company might forfeit its franchise for violation of anti-gambling laws. The statutes of Indiana are somewhat broader than the statutes of other states on the subject of
 
 quo warranto,
 
 in providing that an information may be filed against a corporation where it exercises powers not conferred by law. In disposing of a petition for rehearing of the same case (42 Ind. App., 287, 85 N. E., 724), it is stated in 85 N. E., 724:
 

 “Every grant of corporate power contains an implied condition that the corporation will not violate the criminal laws, for breach of which the state is authorized to terminate the corporation’s existence.”
 

 
 *597
 
 Many other cases decided by courts of other states might be cited, but it would seem to be unprofitable to do so, and we will therefore refer to some of the cases decided by this court. In
 
 State ex rel. Atty. Gen.
 
 v.
 
 Interstate Savings Investment Co.,
 
 64 Ohio St., 283, 60 N. E., 220, 52 L. R. A., 530, 83 Am. St. Rep., 754, a petition in
 
 quo warranto
 
 was filed against an investment company for misuser of its corporate franchises and assumption of franchises and privileges not granted. The particular grounds alleged and proven were that certain certificates of indebtedness were issued and sold in such manner as to contain the elements of chance and prize, therefore constituting a lottery. There was a judgment of ouster.
 

 In
 
 State ex rel. Colburn
 
 v.
 
 Oberlin Bldg. & Loan Ass’n.,
 
 35 Ohio St., 258, it was held:
 

 “Where a corporation has abused or misused its corporate powers, but not in any particular as to which it is declared by statute, the act shall operate as a forfeiture of its charter, the court is vested with a discretion to determine whether the corporation shall be ousted of its franchise to be a corporation, or from the exercise of the powers illegally assumed.”
 

 On page 264 of the.opinion we find:
 

 “Where a corporation has been guilty of acts which, by statute, are made a cause of forfeiture of its franchise to be a corporation, this court has no discretion to refuse such judgment.
 
 State ex rel.
 
 v.
 
 Penn. & O. Canal Co.,
 
 23 Ohio St., 121. But in other cases, we are vested with discretion to determine whether judgment of ouster of the franchise to be a corporation shall be rendered, or
 
 *598
 
 whether the corporation shall be ousted from the exercise of the powers illegally assumed.”
 

 It will be seen that this language is almost identical with the provisions of Section 12324, above quoted.
 

 In
 
 State ex rel. Atty. Gen.
 
 v.
 
 Capital City Dairy Co.,
 
 62 Ohio St., 350, 57 N. E., 62, 57 L. R. A., 181, the dairy company had a franchise to manufacture oleomargarine, which business was unlawfully conducted by reason of the use of coloring matter. That case was therefore in all respects similar to the instant case, and the court declared in the third and fourth paragraphs of the syllabus:
 

 “3. The mere fact that the criminal laws of the state provide for the punishment, by fine, of those who offend against the above-recited sections, is not a bar to a proceeding in
 
 quo warranto
 
 to oust a corporation engaged in the manufacture of oleomargarine, from the exercise of its. right to be a corporation.
 

 “4. Where the manner of conducting a business, which the state’s charter gives power to a company to conduct as a corporation, is in disregard and defiance of the laws of the state relating to that business, an abuse of the power results, and
 
 quo warranto
 
 may properly be invoked to stop the abuse, and, if the abuse be flagrant, to oust the corporation. ”c,
 

 In dealing with the subject of criminal prosecution as an adequate remedy, it was stated by Judge Spear at page 366 (57 N. E., 65) of the opinion:
 

 “It is enough to say of this objection that the remedy is not adequate. The object of the statute is to protect the public. In the nature of things,
 
 *599
 
 a small fine is not a sufficient deterrent to accomplish the desired end, especially in the case of a company possessed of ample means and conducting a large business.”
 

 And, further, on the subject of misuser of the corporate franchises, it was stated at page 367, (57 N. E., 66):
 

 “This authority carries the implication that the business must be conducted in conformity to the laws of the state. It could not have been the intent of the General Assembly, in enacting laws permitting the formation of corporations, to give them power to override the state, although the conduct of the officers of the defendant would seem to imply that they have entertained a different opinion. The time has not yet arrived when the created is greater than the creator, and it still remains the duty of the courts to perform their office in the enforcement of the laws, no matter how ingenious the pretexts for their violation may be, nor the power of the violators in the commercial world.”
 

 This court has more recently employed the writ of
 
 quo warranto
 
 to determine the validity of the conduct of an Ohio corporation, and has not hesitated to correct corporate abuses, in the case of
 
 State ex rel. Price
 
 v.
 
 C. D. & M. Elec. Co.,
 
 104 Ohio St., 120, 135 N. E., 297.
 

 "We have reached the conclusion, both upon principle and upon authority, that the state has abundant power to regulate and control its corporations and to forfeit their powers entirely, or to oust them from the continuance of offensive conduct, or the exercise of unauthorized powers. For this
 
 *600
 
 purpose either judicial or administrative remedies may be employed. It would be unprofitable to inquire into the efficiency of criminal processes of the courts of Ohio as a means of regulating the conduct of corporations, and it is sufficient to say that such remedies are only cumulative to the equitable processes of the courts as provided by Sections 12304 and 12324 of the General Code. When a corporation exercises powers not conferred, it is inevitable and indispensable that there be some authority to curb and limit its unauthorized acts, and this is important, even though such unauthorized powers are such as would be lawful if within its authorized purposes. It becomes tremendously more vital if such unauthorized acts are violations of the penal laws of the state.
 

 In the course of the oral arguments of this cause, counsel for the state referred at some length to crime conditions which prevail at this time, and counsel for the defendant referred to the possible abuse of the authority of the Attorney General. Without in any way basing our conclusions upon crime conditions which now prevail, and which are well known to the courts and all other officials, it need only be said that the courts would be remiss in their duties, and would be evading their responsibilities, if they failed to apply the proper rules of law to the facts pleaded in the information filed by the Attorney General, who is charged with the duty of maintaining law and order, and especially charged with the duty of preventing the corporations of the state from misusing the powers granted to them and from exercising powers not granted.
 

 
 *601
 
 The petition very forcefully states a cause of action, and the court has jurisdiction to grant the relief prayed for. Whether the judgment should be one of complete ouster, or only ouster from continuance of offensive acts, or the exercise of unauthorized powers, must remain for future determination in accordance with the proofs presented after issues of fact have been made up. The demurrer to the petition will be overruled, and defendant will be permitted to answer within 20 days. On failure to answer, judgment of ouster will be awarded.
 

 Demurrer overruled.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur..