(No. 31720.—)

The People of the State of Illinois, Appellee, *vs.* The White Circle League of America, Appellant.

*Opinion filed March 22, 1951.*

Maximilian J. St. George, of Chicago, for appellant.

Ivan A. Elliott, Attorney General, of Springfield, (Robert J. Burdett, and John T. Coburn, both of Chicago, of counsel,) for appellee.

Mr. Justice Gunn delivered the opinion of the court:

The People, upon the relation of the Attorney General, filed a complaint in the circuit court of Cook County against The White Circle League of America, a nonprofit corporation, hereafter called the "White Circle," to show cause why it should not be ousted of its rights to exercise a corporation franchise. The complaint alleges the corporate purpose to be "For the purpose of education as to customs, civic and social standards and charitable purposes among its members, the maintenance of schools therefor, and the dissemination of information and literature appertaining thereto, and to safeguard the property of its members and tax research thereon;" that the said White Circle immediately began a course of disseminating scurrilous and inflammatory attacks upon the Negro race in and about the city of Chicago, and began a drive to obtain new members, and upon obtaining members required or solicited them to purchase membership certificates, and, upon becoming members, each received a letter from the corporation containing matters which are calculated to arouse hatred for the Negro race, and calculated to stir up racial hate between the several races, and some material purporting to convey the impression that Negroes as a class were criminals, all of which matters are attached to the complaint by way of exhibits.

The details of these scandalous publications and letters are not set forth in this opinion because they adequately appear in another cause, in which an opinion has been rendered, *viz., People* v. *Beauharnais, ante,* p. 512, at the January term, 1951. The complaint alleges that the corporation, by the foregoing acts and conduct, has exceeded its corporate authority, and violates the constitutional statutory provisions of the State of Illinois in several ways, among which is the violation of section 224a of division I of the Criminal Code, (Ill. Rev. Stat. 1949, chap. 38, par. 471,) and the Bill of Rights, and that because of the foregoing the said White Circle should be ousted of its corporate

charter, because it has illegally exceeded its corporate authority; or, in the alternative, that it be fined by the court.

A second count to the complaint filed against the directors of the White Circle was dismissed by the Attorney General. The defendant made a motion to strike the complaint because it was not sufficient in point of law, in that there is no allegation showing that the said White Circle does any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation, or that it is exercising rights and privileges not conferred by law. The motion to strike also contends that defendant's actions were justified by provisions of the constitution of the United States, and the constitutiton of the State of Illinois, and that the State is without power to forfeit its charter because of constitutional or statutory provisions. The court having overruled the motion to strike, the White Circle, upon its plea setting forth its corporate purpose, admits that it disseminated certain literature as charged in the complaint; denies that the literature sent out had the effect or purpose alleged in the complaint; and denies that by reason of sending out such literature or the dissemination thereof it had forfeited its charter.

The People made a motion to strike the answer and for judgment, and thereupon the court found that the complaint was sufficient, and that the answer of the defendant was insufficient in law, and that the motion of the plaintiff for judgment on the pleadings should be sustained, and it was ordered, adjudged and decreed by the court that the White Circle League of America be, and the same is, dissolved, and its charter declared null and void, and of no force and effect whatever. From this judgment the appeal is brought directly to this court because a franchise is involved.

Section 1 (Ill. Rev. Stat. 1949, chap. 112, par. 9,) provides when a *quo warranto* proceeding may be brought, and as against corporations, specifies that it may be brought

when "(d) Any association or number of persons shall act within this State as a corporation without being legally incorporated; (e) Any corporation does or omits to do any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation, or exercises powers not conferred by law." It is contended by the People, by inference at least, that the admitted acts of the defendant come within the acts warranting an ouster of its charter and rights to do business. The appellant, however, contends that it has justified by producing its charter, and that the acts it has committed are privileged by the constitution as an exercise of the right of free speech, and that if forbidden at all it is by an unconstitutional statute, and therefore no ground of forfeiture.

The argument of the People for ouster does not adopt the grounds specified in the statute, but contends that the whole purpose of the corporation contravened the public policy of the State of Illinois, and that the contravention of the public policy by the appellant is ground for the ouster of the corporation, and the cancellation of its charter.

There is no question but what the matter disseminated by the appellant violates several statutory provisions of the State of Illinois, and in fact in the recent case at the January term, 1951, one of the directors was found guilty under one of these provisions, and his conviction affirmed by the opinion in *People* v. *Beauharnais, ante,* p. 512. The question is therefore squarely presented whether the persistent violation of a criminal law by a corporation amounts to the "exercise of powers not conferred by law," which justifies the annulment of its charter by a *quo warranto* proceeding.

In the first instance, we should examine the purpose of the writ of *quo warranto* and its general application. In its broadest sense it is a writ of inquiry requiring of the respondent the warrant or authority for the acts about which a complaint is made. It is a remedy or proceeding

by which the legality of an office or franchise that a party or corporation has assumed to exercise is tested, and ousts the holder from its enjoyment if the claim is not well founded. *Quo warranto* is a demand made through the State by some individual to show by what right an individual or corporation exercises a franchise or privilege belonging to the State, which according to the laws of the land they cannot legally exercise except by virtue of a grant or authority from the State. *Quo warranto* is a high prerogative writ, and as such is administered cautiously, and in accordance with certain well-defined principles. The remedy is legal rather than equitable, and civil rather than criminal in character. The courts have often said, in administering the remedy, they should proceed with due deliberation and caution, and the exercise of sound discretion. *Quo warranto* is an appropriate proceeding to forfeit the franchise of a corporation, or oust it from being a corporation. However, it is a general rule that when called upon to forfeit the charter of a corporation the courts proceed with great caution, and have generally refrained from defining a specific ground upon which a forfeiture will be ordered, but prefer to determine each case as the occasion may arise.

In the present case the corporate purpose was "education as to customs, civic and social standards, * * * and the dissemination of information and literature appertaining thereto, and to safeguard the property of its members." The complaint charges that the corporation exercised powers in excess of these purposes by sending out scurrilous, libelous and scandalous publications to stir up race hatred, and to malign the colored race. The statute of Illinois provides that a *quo warranto* proceeding may be brought when any corporation exercises powers not conferred by law. The complaint does not charge the White Circle in so many words with exercising powers not conferred by law, but does allege that by the publication of the scanda-

lous matters specified it has exceeded its corporate authority, and violated constitutional and statutory provisions, and since the respondent has not seen fit to make specific objections, we have a right to infer that the People are relying upon this part of the *quo warranto* statute as justification for this proceeding.

It may be conceded that at common law the practice in *quo warranto* was more closely confined than as authorized by the present statute. It was repeatedly held in earlier cases that the defendant must either disclaim or justify. If he disclaims the People are at once entitled to a judgment; and if he justifies he must set out his title specially. (*Clark* v. *People ex rel. Crane,* 15 Ill. 213; *Illinois Midland Railway Co.* v. *People ex rel.* 84 Ill. 426; *Holden* v. *People ex rel. Wallace,* 90 Ill. 434; *Carrico* v. *People ex rel. Trustees of Schools,* 123 Ill. 198; *Distilling and Cattle Feeding Co.* v. *People ex rel. Moloney,* 156 Ill. 448.) It is to be observed, however, that the statute relating to *quo warranto* has been amended, and its province extended, for it expressly provides that "the court may give judgment of ouster against such person or corporation from the office or franchise," (Ill. Rev. Stat. 1949, chap. 112, par. 14,) or, that it may, instead of judgment of ouster from a franchise for an abuse thereof, "fine the person or corporation found guilty in any sum not exceeding $25,000.00 * * *." So we see that the remedy has been made to include not only the ousting of a corporation, but the writ may be used to inflict a fine instead of an ouster, should the occasion justify.

The *quo warranto* statute provides for the issuance of a writ "when the corporation exercises powers not conferred by law." In the present case no power was conferred expressly or impliedly by the charter of the respondent to violate the laws of the State of Illinois by publishing libelous, scandalous or incendiary matter, and it may very properly be said that for a corporation to publish and dis-

seminate such matters, as a part of its authorized purpose to educate as to customs and social standards, it exercises powers not conferred by law. Since the offending publications also violate statute law the question is immediately presented whether the right to proceed criminally prevents the ouster of the corporate franchise by *quo warranto*. Yet, the more recent statutes and decisions have authorized the use of *quo warranto* where a criminal law has been violated, or where the charter has been granted in excess of law.

In *Pennsylvania ex rel. Woodruff* v. *American Baseball Co.* 290 Penn. 136, 138 Atl. 497, the writ was issued to oust the corporation from the privilege of Sunday baseball, because it violated the Sunday laws of that State. In respect to the same objection here made the court said: "It would be an unthinkable proposition that the commonwealth would create organizations to break its own laws. * * * We can think of no instance in which the Attorney General can move with greater propriety to fulfill his duty * * * than where one of the state's creatures, a corporation of its own creation, avows its right and power to nullify a criminal statute."

In *State ex rel. Hadley* v. *Standard Oil Co.* 218 Mo. 1, 116 S.W. 902, an information in the nature of *quo warranto* was filed by the State because the respondent was violating the antitrust laws, and the court held that the State was not deprived of the right to oust a corporation through *quo warranto* because criminal penalties were authorized by statute. The court asserted this right not because the corporation has been guilty of a crime, and is being punished therefor, but upon the idea that there is an implied tacit agreement upon the part of every corporation, by accepting its charter and corporate franchise, that it will perform its obligation and discharge all of its duties to the public, and that by failure to do so it commits an act of forfeiture which may be enforced by the State by

the application of the writ. The decision of the Supreme Court of Missouri was affirmed in 224 U.S. 270, where it was held that the judgment of the highest court in the State, which had jurisdiction to enter judgments of ouster in a civil *quo warranto* proceeding, was conclusive upon the Supreme Court.

The same result has been reached in *State ex rel. Hadley* v. *Delmar Jockey Club*, 200 Mo. 34, 92 S.W. 185; *State ex rel. Langer* v. *Gamble-Robinson Fruit Co.* 44 N.D. 376, 176 N.W. 103; *State ex rel. Attorney General* v. *Capital City Dairy Co.* 62 Ohio St. 350, 57 N.E. 62; *State ex rel. Snyder* v. *Portland Natural Gas & Oil Co.* 153 Ind. 483, 53 N.E. 1089; *State* v. *Nebraska Distilling Co.* 29 Neb. 700, 46 N.W. 155.

In the Ohio case, in commenting upon the contention that the remedy of the People was the enforcement of the criminal law, the court said: "Its charter, the certificate of the secretary of state, gives it 'the right, privilege, and franchise of manufacturing, selling and dealing in oleomargarin,' etc. This authority carries the implication that the business must be conducted in conformity to the laws of the state. It could not have been the intent of the general assembly, in enacting laws permitting the formation of corporations, to give them power to override the state, although the conduct of the officers of the defendant would seem to imply that they have entertained a different opinion." And in *Reed* v. *Cumberland & Ohio Canal Corp.* 65 Me. 132, in speaking of *quo warranto,* the court said: "The process itself seems to be regular, and to be the appropriate remedy for nonfeasance or malfeasance, abuse of power, or misuse of privilege, by a corporation chartered by the State."

Few cases have arisen in Illinois, but in *Distilling and Cattle Feeding Co.* v. *People ex rel. Moloney,* 156 Ill. 448, the respondent was ousted of an improper franchise granted to it in its certificate of incorporation. And in *People ex rel.*

*McIlhany* v. *Chicago Live Stock Exchange,* 170 Ill. 556, the court holds that a bylaw of a corporation suppressing competition is void, even though the purpose of the corporation is legal and legitimate. The bylaw was not necessary for the corporate purposes and not included within the disclosed purposes, and therefore unlawful, and an abuse of its corporate franchise. While the subject matter of the opinion was the effect of an illegal bylaw, rather than the effect of a violation of the criminal law upon the right to corporate existence, the principle that a corporation must not exceed the power given it clearly emerges.

In the recent case of *People* v. *United Medical Service, Inc.,* 362 Ill. 442, we held that even where a corporation by its certificate of incorporation appeared to have the power to do the acts questioned by *quo warranto,* yet, nevertheless, a corporate franchise proceeds from the sovereign power, and the People have the right at all times to inquire into the title by which such a franchise is claimed or exercised, and to have a judgment of ouster if the franchise was improperly granted. The claim that the sole remedy of the People in cases of this kind is criminal prosecution is without merit. In other words, what authority there seems to be upon the subject, as to the use of the writ of *quo warranto* to oust a corporation in whole or in part because of abuse of power or excess of its corporate franchise, holds this abuse may be restrained or completely stopped by ousting the corporation of its corporate franchise, or by imposing a fine adequate to correct this abuse, in addition to requiring it to refrain from the specified abuse of power.

Considerable stress has been devoted to the proposition that the proper ground for the issuance of the writ in the present case lies in the fact that the respondent has acted in a manner that contravenes the public policy of the State of Illinois, and the respondent, in like manner, claims that the constitutional guaranty of freedom of speech and press

is also a matter of public law and public policy equally to be observed as other provisions of the law. As we view the matter, the issuance of the writ of *quo warranto* does not depend upon whether the corporation contravenes public policy, but whether its acts come within the prohibition of the statute. In the present case the charge of the Attorney General, after surplusage is eliminated, amounts to no more than that the corporation had exercised various powers not conferred by law.

The matter charged in the complaint is not denied by the respondent. In fact, it is admitted by the respondent, but it claims it had a constitutional right to say, print and publish the objectionable matter. We do not think that the question of the constitutional right of free speech or press, or of the constitutionality of the laws forbidding the dissemination of libelous and scandalous matter has any part in this case. The issue is clear and simple. The respondent obtained a charter from the State of Illinois, permitting it to exercise certain rights. When it received this charter it impliedly agreed it would confine its activities to the rights and franchises granted to it. It did not choose to confine itself to the rights granted, but exercised powers not conferred by the charter, and hence not conferred by law. The constitutional guaranty of free speech does not authorize the violation of public contracts made with the State of Illinois, and if the respondent chose to exercise powers not conferred by its charter, and hence by law, it rendered itself subject to the process of the State, and ouster through and by means of the writ of *quo warranto*.

It is true that in the present case the granting of the writ has terminated the corporate life of the respondent, but the record discloses that the respondent has no financial standing, and the statute so seriously regards the breach of duty of a corporation in exceeding the powers conferred by law, that a fine of as much as $25,000 is authorized. The respondent in this case apparently could not pay

a substantial fine, and it was said in the case of *State ex rel. Attorney General* v. *Capital City Dairy Co.* 62 Ohio St. 350: "In the nature of things a small fine is not a sufficient deterrent to accomplish the desired end." In the present case the only deterrent that can be ordered to put an end to illegal and provocative actions is the ouster of the respondent from the exercise of its corporate functions.

We can see no justification of the respondent's acts either in law or in fact, and the judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*