(No. 25479.—)

THE PEOPLE *ex rel.* Robert M. Sandberg *et al.* Appellants, *vs.* B. H. GRABS *et al.*—(PHILIP W. HOWARD *et al.* Appellees.)

*Opinion filed February 21, 1940—Rehearing denied April 10, 1940.*

MICHAEL F. RYAN, and RICHARD F. MCPARTLIN, JR., for appellants.

WARREN H. ORR, for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The State's attorney of Cook county filed a complaint in *quo warranto* in the superior court in the name of the People of the State of Illinois on the relation of Robert M. Sandberg, John M. Gravelot, Jr., and William H. Laue, in which he charged that B. H. Grabs, B. J. Schwoeffermann and Charles C. Donovan were usurping the offices of members of the board of fire and police commissioners of the city of Chicago Heights. The complaint alleged the city had adopted the commission form of municipal government in 1921; that on April 18, 1939, the electors of Chicago Heights adopted the Fire and Police Commissioners act; that on April 28, 1939, the mayor appointed the relators to be the first members of the board of fire and police commissioners; and that on May 8, 1939, the city council appointed the defendants to the same offices. The defendants filed an amended answer admitting substantially the allegations in the complaint, but asserted that the city council, and not the mayor, had the power to appoint the first members of the board. Relators filed a motion for judgment on the pleadings, and raised the question of law as to who had the appointive power, the mayor or the city council. On September 8, 1939, the superior court granted leave to the chief of police, the acting police matron and certain police officers and firemen to intervene. Their petition charged that they had an interest in the *quo warranto* proceeding; that the ballot used at the election on the question of adopting the Fire and Police Commissioners act did not conform to the statute, and that since the act had not been legally adopted by the voters, the offices of members

of the board of fire and police commissioners of Chicago Heights did not legally exist. The city of Chicago Heights, the mayor and various officers thereof, were made defendants to the intervening petition. The original defendants answered that on September 12, 1939, they resigned their positions as members of the board of fire and police commissioners and prayed that they be dismissed. The relators and the mayor moved to strike the intervening petition. The court denied the motion to strike, held the election of April 18, 1939, void, and dismissed the *quo warranto* proceeding. Relators and the mayor have appealed directly to this court for the reason that a franchise is involved. Appellees suggested in their brief that this court had no jurisdiction. Appellants then filed a motion to determine if this court had jurisdiction before arguments were made on the merits of the case. Appellees filed a counter-motion to dismiss the appeal, or transfer it to the Appellate Court for the First District. Both motions were taken with the case.

The title to a public office and the right to perform its duties does not involve a franchise. (*People* v. *Pettow*, 320 Ill. 572; *People* v. *Hogan*, 335 id. 463.) However, where the suit involves not only the right of the defendants to hold the office to which they claim to have been elected, but also the legal existence of the office, a franchise is involved. (*Rostad* v. *Chicago Suburban Water and Light Co.* 211 Ill. 248; *People* v. *Cooper*, 139 id. 461, 485, 486; *People* v. *City of Spring Valley*, 129 id. 169.) The intervening petition charged, in substance, that the city of Chicago Heights was attempting to operate under the Fire and Police Commissioners act without having legally adopted it. The existence of the office to which relators claim title was attacked, and a franchise is involved. The motion to dismiss or transfer is denied.

Appellees next contend that the abstract of the record is insufficient to sustain the appeal, because it does not show

the nature of the notice of appeal or upon which parties it was served. An appeal is perfected when the notice of appeal is filed in the lower court, and no other step in the perfecting of an appeal is jurisdictional. (Ill. Rev. Stat. 1939, chap. 110, sec. 76(2), par. 200.) It is not contended that the notice of appeal was not filed in proper time, or that it was not properly served, but only that the abstract was insufficient. It appears from the abstract that the judgment of the lower court was entered on October 3, 1939; that on November 9, 1939, the notice of appeal was filed, and "November 13, 1939. Proof of service of notice of appeal." This shows that the notice of appeal was served within ninety days after the entry of the judgment appealed from, and within but four days after it was filed. Rule No. 38 of this court (370 Ill. 43) regulates the making of an abstract. It must be sufficient to present fully every error relied upon, and it will be taken to be accurate and sufficient for a full understanding of the questions presented for decision, unless the opposite party shall file a further abstract, making necessary corrections or additions. To dismiss this appeal for failure to fully abstract the notice of appeal and proof of its service where no point is made as to it being regularly and properly filed or served, would be highly technical, and would defeat the announced purpose of section 4 of the Civil Practice act which provides that the act shall be liberally construed to the end that controversies may be speedily and finally determined, according to the substantive rights of the parties. Ordinarily, the appellee must supply an additional abstract if he deems appellant's abstract insufficient. He cannot obtain the dismissal of the appeal, except for flagrant disregard of the rule.

Appellants contend that appellees should not have been permitted to intervene; that they have no interest which would entitle them to intervene; that they were bound to take the issues as they found them, and that the petition to

intervene should have alleged that appellees had not participated in the election. The contentions that appellees have no interest which would entitle them to intervene and that they should have alleged they did not participate in the election ignore the public nature of this *quo warranto* proceeding. The original complaint was filed by the State's attorney on the relation of three persons claiming the offices they alleged defendants were usurping. The mere fact that private citizens appearing as relators are interested in an information does not make the proceeding private in its nature or change its character from one in which the public is interested. (*People* v. *Anderson,* 239 Ill. 266, 269.) The public is not estopped by anything a relator may have done, where it does not appear that the information is filed for his private and exclusive benefit. (*People* v. *Anderson, supra; People* v. *Sleight,* 302 Ill. 45.) Appellees were, therefore, not required to allege that they had not participated in the election.

Appellants' contention that appellees should not have been permitted to intervene and change the issues of the case is based on our decisions in *Hairgrove* v. *City of Jacksonville,* 366 Ill. 163, *Chicago and Western Indiana Railroad Co.* v. *City of Chicago,* 294 id. 257, and *Wightman* v. *Evanston Yaryan Co.* 217 id. 371. These were all equity cases, and in order to intervene in a chancery suit the intervenor must have such interest in the suit that a full and complete determination cannot be had without him, and he must take the suit as he finds it. He may neither change the issues between the parties nor raise new ones. *Quo warranto,* however, is governed by statute, and the chancery rule, so far as it conflicts with the statute, cannot apply. Section 3 of the Quo Warranto act (Ill. Rev. Stat. 1939, chap. 112, par. 11) vests the trial court with discretion over the joinder of parties and the trial of issues to the end that all claims to an office may be settled in one action.

In part, it provides: "The several rights of diverse parties to the same office or franchise, privilege, exemption or license, may properly be determined in one action, and all such persons may be joined in the same complaint, in order to try their respective rights to such office, franchise, privilege, exemption or license; but the court in its discretion may order separate trials when convenience in the determination of any of said several rights so requires. No matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counter-claim or otherwise." A petition to intervene in *quo warranto* calls upon the trial judge to exercise his discretion as to whether the issue presented by the petition is germane to the distinct purpose of the proceeding and would determine the several rights of diverse parties to the same office. It cannot be doubted that an intervening petition which seeks to strike at the very existence of the office over which the original parties are contending is germane to a *quo warranto* proceeding instituted on behalf of the public. Section 25 of the Civil Practice act which applies to *quo warranto* proceedings provides: "Where a complete determination of the controversy cannot be had without the presence of other parties, the court may direct them to be brought in. Where a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct him to be made a party." Statutes such as this have been liberally construed to authorize courts to bring before them all persons necessary to a complete determination of the matters involved and to the granting of appropriate relief. (20 R. C. L. 684.) It is no objection to intervention that the intervenor may oppose both parties. (20 R. C. L. 683.) The court did not abuse its discretion in permitting appellees to intervene so that a complete determination of the issues could be had. It was not necessary for appellees to allege that they had asked the Attorney General and State's attor-

ney to file their petition to intervene. The proceeding, already on file, was public in its nature, and the court's leave to intervene was all that need be obtained.

Appellant finally contends that the ballots used in the election were in substantial compliance with the Fire and Police Commissioners act, (Ill. Rev. Stat. 1939, chap. 24, par. 860,) which provides: "The proposition so to be voted for shall be prepared and provided for that purpose in the same manner as other ballots and shall be substantially in the following form:

| | |
|---|---|
| For the adoption of the provisions of an act to provide for the appointment of a board of fire and police commissioners. | |
| Against the adoption of the provisions of an act to provide for the appointment of a board of fire and police commissioners. | |

The ballots actually used were in the form prescribed by section 16 of the Ballot law, (Ill. Rev. Stat. 1939, chap. 46, par. 305,) which is:

| | | |
|---|---|---|
| Shall (here print the substance of the public measure.) | Yes | |
| | No | |

This court is committed to the rule that where the statute declares the form of the ballot, section 16 of the Ballot law does not apply. The form of the ballot must conform to the statutory mandate, and a failure to observe such provision of the law is a matter of substance and renders the election void. (*People* v. *Cleveland, Cincinnati, Chi-*

*cago and St. Louis Railway Co.* 360 Ill. 180, 190; *People v. Myers,* 256 id. 529; *People v. LaSalle Street Bank,* 269 id. 518.) Appellants rely on *People v. Chicago and Eastern Illinois Railroad Co.* 296 Ill. 246, but there the form of ballot prescribed by the special statute, section 109 of the Roads and Bridges act, was followed substantially. It required the proposition to be submitted in the form of a question with squares opposite the words, "Yes" and "No," as in section 16 of the Ballot law. The proposition was stated more fully than was required by the Roads and Bridges act, but we held there was a substantial compliance with that act. *People v. Chicago and Eastern Illinois Railroad Co. supra,* is consistent with our other holdings, but is not in point. The trial court did not err in holding the election void.

The judgment of the superior court is affirmed.

*Judgment affirmed.*