ILLINOIS POWER COMPANY, Plaintiff-Appellee, *v.* GEORGE H. MAHIN, Director of the Department of Revenue, *et al.*, Defendants-Appellants.

Fourth District   No. 13456

Opinion filed June 13, 1977.

William J. Scott, Attorney General, of Chicago (Bonny Sutker Barezky, Assistant Attorney General, of counsel), for appellants.

William T. Hart and Christopher B. Nelson, both of Schiff, Hardin & Waite, of Chicago, and Nicholas J. Neiers, of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee.

James H. Eddleman, of Springfield, *amicus curiae*.

Mr. JUSTICE MILLS delivered the opinion of the court:

Here is a question of statutory construction.

Illinois Power, a utility company, was notified by the Department of Revenue that additional taxes for the period July 1969 through May 1972, in the amount of $235,406.61, were owed. These were then paid under protest pursuant to statute (Ill. Rev. Stat. 1973, ch. 7, pars. 170 through 172a), and the utility thereafter instituted suit for refund and an injunction.

Under the Gas Revenue Tax Act and Public Utilities Revenue Act (Ill. Rev. Stat. 1973, ch. 120, pars. 467.16 through 481a), the utility is subject to a tax on its "gross receipts." The Department took the position that monies received by the utility from contributions in aid of construction, advances for construction, and equipment and appliance rentals, were subject to inclusion in the definition of "gross receipts" and therefore taxable.

The circuit court disagreed and the Department appeals.

The Public Utilities Revenue Act and the Gas Revenue Tax Act impose a tax at the rate of 5% on the gross receipts of a utility. "Gross receipts" are defined in both acts in identical language as follows:

> " 'Gross receipts' means the consideration received for [electricity] [gas] distributed, supplied, furnished or sold to persons for use or consumption and not for resale *and for all services rendered in connection therewith*, including amounts received from minimum service charges, and includes cash,

services and property of every kind or nature, and shall be determined without any deduction on account of the cost of the service, product or commodity supplied, the cost of materials used, labor or service costs, or any other expense whatsoever. * * *" (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 120, pars. 467.16, 468.)

We must decide whether the advances, contributions and rentals are included in the phrase we have italicized. A short discussion of these aspects in the sale or distribution of gas or electricity is in order.

Public utilities base their rates on certain norms of use. Deviations from the norm for equipment or installation are not furnished *gratis* by the utility, and customers desiring them have several options. They can provide such variances at their own expense, or make advance payments or contributions toward their cost, or rent them. Obviously, customers who provide their own pay nothing to the utility. Sometimes the contribution for additional installations beyond the norm is refundable—this is termed an "advance." A nonrefundable payment is termed a "contribution." A good example is where the customer desires underground electric service or mains extended beyond the standard distance. In these instances the customer either contributes or advances the amounts required to effect his above-norm requirements. The utility makes the point that the billing for these extra services is made separately from the charges for gas or electricity, and that the services are the subject of separate negotiation. The utility also rents nonstandard equipment and, in some instances, even appliances (such as water heaters and ranges). Examples of rented equipment are switches, transformers and meters. Leases are entered into, and, again, the rent is separately billed. The nonstandard installations or equipment obtained by advances or contributions remain, or become, the property of the utility. The customer gets the use while the utility owns them.

The utility argues that since these transactions are entirely separate from the sale of gas or electricity, such advances, contributions or rents cannot be considered monies received by it for electricity or gas sold to the customer, or for "services rendered in connection" with such sale. The Department argues just the opposite—that the payments received are for "services rendered in connection" with the sale of gas or electricity and thus are "gross receipts" and subject to the tax. The Department equates the advances and contributions with the service charges—rather than the "purchase price" for the energy. It argues further that the customers can only get the energy service they desire with these additional facilities, and therefore the payments are for "services in connection" with the sale of energy. The rentals, too, it says, use gas or electricity. The customer needs

or wants them, and thus rental payments are for "services rendered in connection" with the sale of energy and therefore includable in "gross receipts."

■■ When construing statutes, text must always be read in context. We must shy away from reading language too literally—likewise, from reading it too broadly, for in doing so we might be supplying text. What we try to garner, if possible, is what the legislature intended. Rules of statutory construction can be of aid—if meaning is doubtful—and some are urged on us here.

■■ The Department first cites the rule that every presumption is against the intention of the State to exempt property from taxation (which, they say, is precisely what the trial court did). But this rule is to be read, we think, only in a context where exemptions are spelled out. "Provisions *granting* tax exemptions are to be construed strictly." (*Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 290, 134 N.E.2d 292, 295.) The operative word in this statement of the rule we have emphasized, and we find no grant of an exemption in the acts before us. A corollary of this rule is that one seeking the exemption has the burden of proving it. But we discern no exemptions as such in these sections, as we have said, and the rule is therefore hardly apposite. The question for us is not what is exempt or exempted, but the other way around: What do we include in the text "services rendered in connection therewith," when read in its context?

The utility says that where the specific words used are followed by general words, the specific words govern the character or kind of the matter included in the general words. This rule doesn't help us very much. Are the "consideration received for" energy "sold for use or consumption" limited words? And the phrase "for all services rendered in connection therewith" general? We take the argument to say so, but we hardly think so. It seems to us that we still have to determine whether the receipts here included are in the so-called general phrase (the one we have italicized), and we don't see how precisely these words can be, or are, limited by that which precedes them—except, of course, that energy must be sold or distributed to customers for their use or consumption. The only rule we know of applicable here (if such can be called a rule) is that all words in a statute must be read together, or, as we have said, in construing text we must look to context.

We read these sections to mean simply this: that the term "gross receipts" includes the consideration received from "all services rendered in connection" with electricity or gas distributed, supplied, furnished or sold to persons for use or consumption and not for resale. The so-called general phrase—"all services rendered in connection therewith"—is limited, if at all, by the so-called specific words that the services must be connected with the sale, etc., of gas or electricity. Thus, when the utility

installs extra facilities or leases appliances it does so, as we see it, in order to be able to distribute, supply, furnish and sell gas and electricity to a particular customer. These services, we think, come within the phrase "all services rendered in connection therewith," and such phrase is not limited except as we have indicated. We conclude that the rules cited are inapplicable, and we fall back not on interpretative aids but on a simply common-sense accommodation of giving to words their everyday meaning.

In the beginning the Public Utilities Act was an omnibus enactment which taxed "gross receipts" of persons engaged in the telephone, gas and electric business. "Gross receipts" were defined the same as in the present two statutes we are concerned with. But there was an additional provision reading, "The words 'transmitting telegraph or telephone messages' shall include the leasing or rental of equipment or property for the transmission of telegraph or telephone messages." (Ill. Rev. Stat. 1937, ch. 120, par. 468.) In 1945, this act was amended to become the Public Utilities Revenue Act and covered only electricity (Ill. Rev. Stat. 1945, ch. 120, par. 468 *et seq.*). Separate acts were also enacted to cover gas (Ill. Rev. Stat. 1945, ch. 120, par. 467.16 *et seq.*) and telephones (the Messages Tax Act, Ill. Rev. Stat. 1945, ch. 120, par. 467.1 *et seq.*). In each of the three acts the phrase "all services rendered in connection therewith" was retained. And the Messages Tax Act had this further definition, somewhat the same as before: "The words, 'transmitting messages' * * * shall include the furnishing, for a consideration, of services or facilities (whether owned or leased), or both, to persons in connection with the transmission of messages * * *." The utility argues from this 1945 legislative action that had the legislature intended to include leasing in the definition of "gross receipts" in the Gas Revenue Tax Act and the Public Utilities Revenue Act they could have said so, and since they didn't—but *did* in the Messages Tax Act—such inaction or silence implies at the very least that the legislature did not intend to tax the consideration received from leasing of appliances and equipment. In other words, why put it in the Messages Tax Act and leave it out for gas and electricity unless the legislature was trying to tell us something? The Department in response hews to the literal, arguing that there being three separate acts, and each being *sui generis*, they must be considered each by themselves without referral to the others—that is, they are not *in pari materia*.

The utility's argument has some cogency. Silence and inaction do have their implications, and maybe more so here where the triad of acts had a common ancestor. But the inferences that the utility urges us to draw seem to us here to be considerably less than inexorable. To draw what they saw we should makes us strain too much—certainly as to advances and contributions for non-norm construction. Any such inference we

might draw at the very most would be limited to leasing, that is, that "gross receipts" would not include rental payments.

■■■ But in determining legislative intent, as we have said, we must first look to the words used, for it is only when the words are inadequate that we turn to legislative history and interpretive aids to more clearly perceive intent, or, indeed, in some instances to discover it. That is not our case. The words here are plain. We give them an everyday meaning, and in our opinion they are enough. In two separate acts the legislature has ordained a tax upon persons engaged in the business of distributing, supplying, furnishing or selling electricity and gas "at the rate of 5% of the gross receipts from such business." Both acts say that "gross receipts" mean the consideration received for the electricity or gas so distributed, supplied, furnished or sold to persons for use or consumption and for "all services rendered in connection therewith." "Services" in this context is generic and has a very broad meaning indeed—meaning work performed in the interest of another. In plain, albeit redundant, language, what the legislature is saying to us is simply this: that the term "gross receipts" means the consideration the utility gets from selling gas and electricity and for services connected with such selling. "Connected" means attached to or associated therewith. Clearly in the examples we have given for advances or contributions, the monies paid are attached to or associated with the distribution, supply, furnishing or sale of electricity or gas to the customer for his use or consumption and for which he makes payment. It is no answer to say (as the company argues) that the gas or electricity isn't actually distributed, supplied, furnished or sold at the time the underground conduits are put in or that such facilities and extensions are paid for by persons (developers) who will not be he ultimate customers. In our opinion, rental payments, too, for equipment and appliances used for the distribution, supply, furnishing or sale of electricity or gas are includable in "gross receipts." It is no answer, we think, to say that the same equipment can be obtained from sources other than public utilities. It is hard to see how it can be argued—looking only to the words themselves and without resort to rules for statutory construction or legislative history—that the leasing of electrical or gas appliances (refrigerators, ranges, etc.) are not associated with, or attached to, the use or consumption of gas or electricity which has been distributed, supplied, furnished or sold by the utility. The phrase "all services connected therewith" is to us plain and unambiguous and its application certain. The language used is, in our opinion, free and clear of doubt as to what the legislature intended, and its intention is as we have stated it above.

The utility cites the Washington case of *King County Water District No.*

*68 v. Tax Com.* (1961), 58 Wash. 2d 282, 362 P.2d 244, as involving an identical problem of statutory construction with almost the same facts. But the pertinent phrases there were "gross operating revenue" and "including operations incidental thereto." This is hardly identical, nor are the facts the same—as is apparent where water distribution is involved. As might be gathered in citing to us this case, the utility there won. But we don't have to disagree with the holding—which we don't—in concluding that the case is not authority here for the reasons stated. In the same light we view the utility's argument that its treatment, for accounting purposes, of funds received for advances and contributions as loans or contributions to capital rather than revenue and such funds received are not carried on their books as "gross receipts." Assuming this to be the case—indeed the evidence was not otherwise—the utility's accounting practices are wholly immaterial in answering what is and what is not includable in "gross receipts" as the legislature has defined them. We wouldn't go so far as to say that their accounting system (mandated by the Commerce Commission) would always be immaterial, but it is here. And for the same reason that we can reject statutory construction aids and legislative history, the legislative purpose and intent is pellucidly clear.

■■ Finally, we see nothing inconsistent with a further provision of these acts—"[i]n case credit is extended, the amount thereof shall be included only as and when payments are received" (Ill. Rev. Stat. 1973, ch. 120, par. 467.16) as inconsistent with our holding or supportive of the utility's position. Likewise, the fact that the Department of Revenue saw fit not to tax these transactions for over 30 years does not argue against our conclusion. As was said in *Whittemore v. People* (1907), 227 Ill. 453, 471, quoting from 2 Sutherland, Statutes and Statutory Construction §473:

> " 'Long usage is of no avail against a plain statute; it can be binding only as the interpreter of a doubtful law and as affording a contemporary exposition.' "

The statutes here are "plain".

The judgment appealed from is reversed and the cause remanded with directions that judgment be entered in favor of the defendants and for a finding that plaintiff is liable for the public utility revenue tax and gas revenue tax assessed against it.

Reversed and remanded with directions.

CRAVEN, P. J., and GREEN, J., concur.