THE PEOPLE *ex rel.* BERNARD CAREY, State's Attorney, Plaintiff-Appellant, *v.* LINCOLN TOWING SERVICE, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 62945

Opinion filed October 4, 1977.—Supplemental opinion filed on denial of rehearing November 22, 1977.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Alan L. Fulkerson, Assistant State's Attorneys, of counsel), for appellant.

Lipnick, Barsy & Joseph, of Chicago (Burton Joseph, of counsel), for appellees.

Mr. JUSTICE PUSATERI delivered the opinion of the court:

This action was initiated by the State's Attorney of Cook County, Bernard Carey, and three other individual named plaintiffs, who brought a three count complaint to oust the defendant Lincoln Towing Service, Inc., from its corporate franchise and to enjoin the individual defendants Ross Cascio and John Andrea from continuing to conduct business in the complained of manner.

Under counts I and II of the complaint, the plaintiff was the People of the State of Illinois on the relation of Bernard Carey, State's Attorney of Cook County, Illinois.

Count I of the complaint sought relief by way of *quo warranto* (Ill. Rev. Stat. 1973, ch. 112, par. 10), alleging that the defendant Lincoln Towing Service, Inc., through its officers, employees and agents, exercised powers not conferred upon it by law and in excess of the powers conferred upon it by its corporate charter. Specifically, count I alleged that Lincoln Towing:

"A. * * * purposely engaged in a persistent and consistent course of criminal trespass to vehicles in violation of Ill. Rev. Stat., Ch. 38, §21—2 (1973).

B. * * * purposely engaged in a persistent and consistent course of unlawful intimidation, coercion and other illegal conduct to compel others to deal with it, in violation of Ill. Rev. Stat., Ch. 38, §38 *et seq.* (1973), to wit:

> 1. Unlawfully refusing to surrender the possession of towed automobiles after demand for possession by the parties entitled thereto, until an illegal towing and storage charge is paid.
>
> 2. Entering and damaging vehicles in violation of Ill. Rev. Stat., Ch. 95½, §4—102(a) and (b) (1973)."

Count II of the complaint was brought pursuant to the statute entitled "Criminally Operated Businesses" (Ill. Rev. Stat. 1973, ch. 38, par. 38—1 *et seq.*), and sought to revoke the corporate charter of the defendant Lincoln Towing as well as to enjoin the defendants Ross Cascio and John Andrea from conducting business in the complained of manner.

Under count III of the complaint, the three individual plaintiffs, by their attorney, Bernard Carey, State's Attorney of Cook County, sought to bring a class action on behalf of themselves individually and on behalf of all others similarly situated. On June 30, 1976, this court, pursuant to a written opinion (40 Ill. App. 3d 126, 351 N.E.2d 342), held that the State's Attorney improperly attempted to represent the individual plaintiffs in this cause, and granted the motion of the defendants-appellees to oust the State's Attorney of Cook County as attorney for the private individuals named. On January 11, 1977, the individual plaintiffs having failed to pursue their appeal by their own counsel, the appeal with respect to count III of the complaint (the class action wherein they were plaintiffs) was dismissed herein.

As to counts I and II, the trial court entered an order granting the defendant's motion to strike and dismiss, holding: (1) *quo warranto* was an inappropriate remedy under the allegations in count I; and (2) the statute on which count II is based is inapplicable to the conduct complained of. The case was brought before us on the appeal of the plaintiff seeking a reversal of the trial court's order striking and dismissing counts I and II.

In support of the allegations in the complaint, the plaintiff submitted affidavits of eight individuals as exhibits attached to the complaint. The eight affidavits averred facts that defendants sometimes towed vehicles which were legally parked and refused to return them to their owners until a charge was paid; that the defendants sometimes returned vehicles which they had towed, to their owners, in a damaged condition; that notices advising vehicle owners that their vehicles would be towed by

Lincoln Towing, or any towing company, were not always posted on the premises from which the defendants towed vehicles; that an agent of the corporate defendant made threats of physical harm to a person requesting return of his automobile; and that defendants refused return of an automobile, after receiving the charge demanded for release of the automobile.

Count I of the complaint seeks to assert *quo warranto* as the appropriate remedy to the averred complained of facts. The writ of *quo warranto* is not a routine legal procedure; it is included in the category of legal writs known as "Extraordinary Remedies" (Allen, *Mandamus, Quo Warranto, Prohibition, and Ne Exeat*, 1960 Ill. L. F. 102). It is one of the most ancient writs known to the common law, a high prerogative writ "in the nature of a writ of right for the king, against him who claims or usurps any office, franchise, or liberty, to inquire by what authority he supports his claim, in order to determine the right." 3 W. Blackstone, Commentaries *262.

■■ Until the early 18th Century, the remedy was available only on the suggestion of the Attorney General to prevent encroachment upon the royal prerogative.[1] The Statute of Anne (9 Anne, ch. 20 (1711)), expanded the writ's applicability, to cases of "intrusion into, or usurpation of corporate offices in corporate places." *State of Ashley*, 1 Ark. 279, 305 (1839).

■■ The availability of *quo warranto* in the United States generally is regulated by constitutional or statutory provisions (74 C.J.S. *Quo Warranto* §1 (1951)), although in some States it still exists as part of the common law (*Cleaver v. Roberts* (1964), 57 Del. 538, 203 A.2d 63). In Illinois, the *quo warranto* remedy, now is, in effect, a statutory information in the nature of *quo warranto*, and under the statute it has become the vehicle for the assertion of many rights, both public and private, which could not have been vindicated at common law by *quo warranto*. (*People ex rel. Sandberg v. Grabs* (1940), 373 Ill. 423, 26 N.E.2d 494; *People ex rel. Raster v. Healey* (1907), 230 Ill. 280, 82 N.E. 599.) The Quo Warranto Act enacted in our State in 1937 (1937 Ill. Laws 992) repealed the Act of 1874 (Ill. Rev. Stat. 1874, ch. 112) and made various procedural changes, but did not change the substantive requirements of *quo warranto* under the former Act. *People ex rel. Barrett v. Gentile Cooperative Association* (1946), 392 Ill. 393, 64 N.E.2d 907.

■■ Since a corporate franchise proceeds from the sovereign power, the People have the right at all times to inquire, by way of *quo warranto*, into the title by which such a franchise is claimed or exercised. (*People v.*

---

[1] The earliest recorded case arose in the reign of Richard I. In 1198, the incumbent of a church office was called upon to show *quo warranto*—literally, by what warrant—he held office. J. High, Extraordinary Legal Remedies 425 (2d ed. 1874)

*United Medical Service, Inc.* (1936), 362 Ill. 442, 452, 200 N.E. 157.) *Quo warranto* is a remedy for determining the right and title to corporate office (compare *Department of Disabled American Veterans v. Bialczak* (1st Dist. 1976), 38 Ill. App. 3d 848, 349 N.E.2d 897, with *People ex rel. Stoolman v. Pyle* (3d Dist. 1924), 235 Ill. App. 532), and a method for testing the legality of the existence of a private corporation (*Osborn v. People ex rel. Lewis* (1882), 103 Ill. 224; *Nelson Chesman & Co. v. Singers* (4th Dist. 1913), 183 Ill. App. 591).

■■ The Quo Warranto Act provides that a proceeding in *quo warranto* may be brought in case "Any corporation does or omits to do any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation, or exercises powers not conferred by law; * * *." (Ill. Rev. Stat. 1973, ch. 112, par. 9(e)).[2] If a corporation violates this provision, it may be ousted from its franchise or its franchise may be forfeited. Ill. Rev. Stat. 1973, ch. 112, par. 14; see *People v. White Circle League of America* (1951), 408 Ill. 564, 97 N.E.2d 811.

In our State, it has seldom been necessary to utilize the provisions of the Quo Warranto Act to oust Illinois corporations from the privilege of the corporate franchise, other than for nonpayment of franchise taxes, as most such enterprises have been of law-abiding character. The case of *People v. White Circle League of America* made clear, however, that the law is not powerless to act if it should appear that a corporation persists in illegal activity. Rather than proceed by complaint in equity, the Attorney General there instituted a *quo warranto* proceeding based on alleged violations by the League of those sections of the Criminal Code relating to the dissemination of obscene materials.

The proceeding was successful, and the corporation was ousted from its franchise, despite a claim that constitutional rights of free speech and free press were being invaded. The facts being generally admitted by the pleadings, the principal issue was one as to whether or not the common law writ of *quo warranto*, as regulated by statute, was broad enough in scope to cover the situation. The court interpreted the fifth specification of the first section of the statute, to-wit: one relating to any corporation which "does or omits to do any act which amounts to a * * * forfeiture * * *, or exercises powers not conferred by law" (Ill. Rev. Stat. 1949, ch. 112, par. 9(e)) as being sufficient to deal with the problem. It achieved that conclusion, without going into the broader questions of public policy, on the theory that any corporation engaged in criminal acts necessarily exercises powers "not conferred by law." Following the decision in *White Circle,* it was opined that the "use of either *quo warranto* or bill in equity is, then, clearly permissible should there be occasion, in the future, to

---

[2] See 1930 Op. Att'y Gen. 579.

bring another corporation to book for its unlawful activities." 30 Chi.-Kent L. Rev. 1, 3 (1951).

In its decision in the *White Circle* case, the Illinois Supreme Court, in sustaining the lower court decree that the corporate charter of the defendant corporation be declared null and void, and of no force and effect whatever, and that the corporation be dissolved, stated as follows:

> "The *quo warranto* statute provides for the issuance of a writ 'when the corporation exercises powers not conferred by law.' In the present case no power was conferred expressly or impliedly by the charter of the respondent to violate the laws of the State of Illinois by publishing libelous, scandalous or incendiary matter and it may very properly be said that for a corporation to publish and disseminate such matters, as a part of its authorized purpose to educate as to customs and social standards, it exercises powers not conferred by law. Since the offending publications also violate statute law the question is immediately presented whether the right to proceed criminally prevents the ouster of the corporate franchise by *quo warranto*. Yet, the more recent statutes and decisions have authorized the use of *quo warranto* where a criminal law has been violated, or where the charter has been granted in excess of law." *White Circle*, at 569-70.

Replying to the assertion that the sole remedy of the People in cases of this nature is criminal prosecution, the court stated as follows:

> "The claim that the sole remedy of the People in cases of this kind is criminal prosecution is without merit. In other words, what authority there seems to be upon the subject, as to the use of the writ of *quo warranto* to oust a corporation in whole or in part because of abuse of power or excess of its corporate franchise, holds this abuse may be restrained or completely stopped by ousting the corporation of its corporate franchise, or by imposing a fine adequate to correct this abuse, in addition to requiring it to refrain from the specified abuse of power." *White Circle*, at 572.

Thus, in the case at bar, the corporate purposes of the defendant Lincoln Towing Service, Inc., are to "engage in the business of automobile, truck, and vehicle towing; to own, buy and lease real estate; and to engage in such other acts or conduct not prohibited by law in futherance thereof." When defendant Lincoln tows a motor vehicle from private property without the consent of the vehicle owner, his authorized agent or the lawful possessor thereof, and later refuses to return the vehicle until the owner pays a towing and storage charge, when it returns an automobile in a damaged condition, and when it intimidates through threats of physical harm (Ill. Rev. Stat. 1973, ch. 38, par. 12—6(a)(1)), it may

properly be said that it is exercising powers not conferred upon its charter or by law.

■■ ■ Since Lincoln Towing has no valid possessory lien on the vehicles it tows, its refusal to return them to the owners until a towing and storage charge is paid may be found to be an act of conversion. The essence of an action for conversion is the wrongful deprivation of property from the person entitled to possession. (*Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc.* (3d Dist. 1971), 2 Ill. App. 3d 978, 276 N.E.2d 89; *First Finance Co. v. Ross* (1st Dist. 1966), 75 Ill. App. 2d 403, 221 N.E.2d 37.) A party claiming a conversion must show (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right in the property; (3) his right to the immediate possession of the property, absolute and unconditional; and (4) a demand for possession thereof. *Hobson's Truck Sales, Inc.*; 89 C.J.S. *Trover and Conversion* §§36, 50, 52 (1955).

In the recent decision of *Kunde v. Biddle* (4th Dist. 1976), 41 Ill. App. 3d 223, 353 N.E.2d 410, the defendant towing company's right to assess towing and storage costs and obtain a lien thereby against wrongfully parked automobiles removed from privately owned parking lots without the lawful owners permission was challenged by three individual plaintiffs. The defendant towing company argued in a manner, similar to that in which the defendant Lincoln Towing argues in the case at bar, that when the automobile owners placed their vehicles on private property, they put the owners of the property in the lawful possession of the vehicles, and vested them with the right to have services performed in accordance with Ill. Rev. Stat. 1973, ch. 82, pars. 40, 47a, which statutes afford a statutory lien on a chattel for labor expended on that chattel, when the labor is expended at the request of the owner, authorized agent of the owner or lawful possessor of the chattel.

The *Kunde* court, in rejecting the argument of the defendants, stated as follows:

"There appears to be no case which has defined the term 'lawful possessor' in the context of these statutory provisions. A construction that the lot owners were lawful possessors would be a strained interpretation and application of the statutory lien provisions. The lot owners cannot be considered agents of the plaintiffs [vehicle owners] since they did not act in a representational capacity, nor were they under the control of plaintiffs [citation], nor were they bailees of the automobiles since they did not accept control over the cars. [Citation.] While the lot owners may have had, as plaintiffs concede, the right to have the vehicles removed from their property, they cite no authority for

the proposition that they acquired possessory rights in the vehicles because they were wrongfully parked on their property. A mere possessor has no authority to create a lien against an automobile without the owner's consent. [Citation.]" (*Kunde,* at 225-26.)

The court then proceeded to reverse the trial court's judgment in favor of the defendant towing company and remanded with directions to enter judgment on the issue of liability for conversion in favor of the plaintiffs, and further ordered a hearing on the issues of damages.

In *Murrell v. Trio Service Co., Inc.* (Fla. App. 1974), 294 S.2d 331, plaintiff, who had parked his car on private property, brought an action to recover compensatory and punitive damages for conversion against defendant towing service, which had towed plaintiffs vehicle from a private parking lot at the request of the lot owner. The court found that defendant was liable for conversion, rejecting the argument of the defendant that it acquired a lien for towing and storage, either by statute or common law.

In the case of *Younger v. Plunkett* (E.D. Pa. 1975), 395 F. Supp. 702, plaintiff car owners brought suit against two towing companies challenging the constitutionality of the Pennsylvania Possessory Lien Law. One of the plaintiffs, in a similar matter as the case at bar, parked an automobile in a private lot, and upon being advised subsequently that it had been towed away by a towing service, was also advised that in order to recover it, he would have to pay a fee for the towing and storage. The court concluded that the towing companies acquired no possessory lien under either Pennsylvania Common law or statutory enactment. The *Younger* court, in denying the lien rights, stated:

"* * * But, in contrast, the lien system can cause certain extraordinary abuses * * * Here we decide merely the towing company's common law lien rights, and as the legislature has done in the past, when it concluded, that the common law remedies were inadequate, it can explore the type of system which gives a fair measure of protection for the owners of land and the owners of cars." *Younger v. Plunkett,* at 714-15.

The affidavit exhibits submitted by plaintiff in the case at bar, in support of its complaint, allege that the employees of defendant damaged transmissions and exterior areas of vehicles which they towed, despite direct requests of the owners of the vehicles that they not be moved, and thus the defendant Lincoln Towing may be found to have committed, as to each damaged vehicle, a misdemeanor offense in violation of section 4—102(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 4—102(a)), which provides:

"It is a violation of this Chapter for:

(a) A person, without authority to do so, to damage a

vehicle or to damage or remove any part or component of a vehicle; * * *."

One of the affidavits attached to the complaint alleges that an agent of Lincoln Towing made threats of physical harm to the affiant after he paid Lincoln's charge and requested the return of his automobile. These threats may be construed to be in furtherance of Lincoln's conversion of the affiant's damaged automobile, and Lincoln Towing may be found to have committed a felony offense in violation of section 12—6(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 12—6(1)), which provides:

> "Intimidation. (a) A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any. of the following acts:
> (1) Inflict physical harm on the person threatened or any other person or on property; * * *."

Our Illinois Constitution (Ill. Const. 1970, art. I, §12), provides that every person shall find a certain remedy for all injuries and wrongs received, not only to his or her person, privacy or reputation, but also to his or her property. From the date of the founding of our country, one of the most fundamental and cherished constitutional rights a person has is the right not to be deprived of property without due process of law (U.S. Const., amend. V). History will record the current period of our government as one which has placed greater emphasis on the rights of others than any other period since the founding of our republic. Our courts have a special obligation to assert themselves in behalf of the rights of others, whether those persons seeking to deny these rights be governmental or private.

A threat to the deprivation of one person's property is a threat to a deprivation of every person's property. In a society that condones the abuse of one of its citizens, none of its citizens is safe, for it is the nature of power to consume all competing forces. We believe that the rule of law is to restrain and order power so that it will serve, and not destroy human rights. In this world of imperfect human beings, it is one thing to know what should be and quite another to deal with what is. We know that every person ought not to be deprived of property without due process of law, but we are not always in a position to see that it happens.

The abuse of another human's rights, whether they be personal or property, is likely to be the greatest where freedom in general is circumscribed. We all enjoy a common history associated with the rule of law. This is a history replete with names such as Socrates, Galileo, and Zenger, whose trials helped to defend that rule of law. It is a history that transcends both political boundaries and time. It has been stated that

courts ought not to be discouraged from creating innovative legal remedies to meet changing social conditions. (*Sparkman v. McFarlin* (7th Cir. 1977), 552 F.2d 172.) Should they also not only speak out for the rights of others, but defend every freedom that the rule of law has given.

■■ Our courts have held that the power and adequacy of the available remedy afforded by our constitution (Ill. Const. 1970, art. I, §12) rests with the legislature. (*State Bank of Lombard v. Segovia* (2d Dist. 1977), 49 Ill. App. 3d 682, 364 N.E.2d 688; *Goldstein v. Hertz Corp.* (1st Dist. 1973), 16 Ill. App. 3d 89, 305 N.E.2d 617.) Were the legislature to have afforded no remedy, we would have found no wisdom in abdicating to the legislature our essential function of re-evaluating common law concepts in the light of present day realities. (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881.) However, in this instance, our legislature has afforded the remedy of *quo warranto*, and our supreme court has stated that this statute provides for the issuance of a writ " 'when the corporation exercises powers not conferred by law.' " *People v. White Circle League of America* (1951), 408 Ill. 564, 569, 97 N.E.2d 811.

■■ In the case at bar, the allegations in count I of the complaint and the affidavits submitted in support thereof are sufficient to require a hearing thereon, for if proven to be true, it can be said that no power was conferred expressly or impliedly by the charter of the defendant to violate the laws of the State of Illinois by converting and damaging the vehicle of others and intimidating by threats of physical harm in connection therewith, and it may properly be found that for a corporation to so act constitutes the exercise of powers not conferred by law.

Under the provisions of the Quo Warranto Act (Ill. Rev. Stat. 1973, ch. 112, par. 14), it shall be the duty of the trial court to determine and adjudge the rights of all parties to the proceeding. If a corporate defendant is adjudged guilty as charged in the complaint, the court may give judgment of ouster from the office or franchise and fine the corporate defendant, or in the alternative, even without any judgment of ouster from a franchise for an abuse thereof, the court may fine said corporation found guilty, in any sum not exceeding $25,000 for each offense.

■■ Thus, we conclude that the defendant corporation should be required to answer count I of the complaint, and show by what warrant or authority it claims to have, use and enjoy the privileges and franchises, powers and authority aforesaid, and thereupon if defendant fails to justify or disclaim said actions, it may be prevented, ousted and prohibited from using or exercising those privileges, powers and authority or may be fined for abuse of its franchise.

As to count II of the plaintiff's complaint, it seeks a permanent injunction enjoining the individual defendants, their employees and agents, "from engaging in the business of towing automobiles, trucks or

other vehicles," and for an order revoking defendant's corporate charter and enjoining it from engaging in business.

The complaint asserts as its authority to commence and maintain such action, section 38—1 *et seq.* of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 38—1 *et seq.*), commonly referred to as the "Anti-Racketeering Statute," the relevant part of which reads as follows:

> "38—1. Forfeiture of Charter and Revocation of Certificate. The State's Attorney is authorized to institute civil proceedings in the Circuit Court to forfeit the charter of a corporation organized under the laws of this State or to revoke the certificate authorizing a foreign corporation to conduct business in this State. The Court may order the charter forfeited or the certificate revoked upon finding (a) that a director, officer, employee, agent or stockholder acting in behalf of the corporation has, in conducting the corporation's affairs, purposely engaged in a persistent course of intimidation, coercion, bribery or other such illegal conduct with the intent to compel other persons, firms, or corporations to deal with such corporation, and (b) that for the prevention of future illegal conduct of the same character, the public interest requires the charter of the corporation to be forfeited and the corporation to be dissolved or the certificate to be revoked."

The State's Attorney of Cook County, plaintiff herein, acknowledges that there have been no judicial decisions interpreting the aforementioned statute; defendant-appellee has cited no authorities in this regard in its brief, and our independent research has also failed to uncover any authorities, interpretations, legislative debate or testimony. Thus, faced with no controlling authority, either constitutional, statutory or by case law, we may, on the one hand, weigh the rights of the parties from the standpoint of the dynamics of the social conditions with which we are faced and the public interest and private needs of the parties involved. However, we also need seek to determine the legislative intent, keeping in mind the basic rule of statutory construction that the true intent and meaning of the legislature must be ascertained and given effect (*People ex rel. Kucharski v. Adams* (1971), 48 Ill. 2d 540, 543, 273 N.E.2d 7; *Bee Jay's Truck Stop, Inc. v. Department of Revenue* (1st Dist. 1977), 52 Ill. App. 3d 90, 367 N.E.2d 173), and that each provision of the statute should be construed in connection with every other provision and in light of the statute's general purposes *Neville v. Friedman* (1977), 67 Ill. 2d 488, 367 N.E.2d 1341.

The Act is entitled "Criminally Operated Businesses" and became law on July 2, 1965. At the time this legislation was introduced in the Illinois General Assembly, the Chicago Crime Commission appeared as sponsor of the legislation and issued a statement in support thereof. This statement

makes reference to the "* * * accounts of violence which result from the efforts of organized crime to infiltrate and gain control of legitimate businesses" and concludes with the statement "* * * such legislation is necessary to protect business from the constant threat of invasion by organized crime."[3]

■■ Also to be considered is that the Act was drafted, based in great part, in reliance on the Model Penal Code proposed by the American Law Institute, and specifically article 6, section 6.04 of the Model Penal Code. (Model Penal Code §6.04 (Proposed Official Draft, 1962).) The official comments to section 6.04 speak in terms of "* * * cases dealing with criminal conduct as a basis for charter forfeiture emphasize the habitual and persistent character of the conduct." Model Penal Code §6.04, Comment, at 203 (Tent. Draft No. 4, 1955).

Most recently our supreme court has admonished that our task in construing a statute is a narrow one, and whatever the interstices of the legislative process may be, our obligation is to give expression to the intent of the legislature and to give its product a constitutional meaning whenever possible. (*Anderson v. Schneider* (1977), 67 Ill. 2d 165, 178, 365 N.E.2d 900.) It has also been emphasized that we must place primary emphasis on the words used, for in any event, it is only when the words are inadequate, that we turn to legislative history and interpretive aids to more clearly perceive intent, or, indeed, in some instances to discover it. *Illinois Power Co. v. Mahin* (4th Dist. 1977), 49 Ill. App. 3d 713, 718, 364 N.E.2d 597.

■■ The key statutory words then to be considered by us are, "* * * purposely engaged in a persistent course of intimidation, coercion, bribery or other such illegal conduct with the intent to compel other persons, firms, or corporations to deal with such corporation, * * *." (Ill. Rev. Stat. 1975, ch. 38, par. 38—1.) We conclude that these statutory phrases and this statute was designed to apply to and prevent the activities of organized crime, and so-called syndicate activities, in instances where legally operated businesses, such as hotels and restaurants, are compelled to purchase their towels, linens, or silverware, or have their refuse collected, through "* * * intimidation, coercion, bribery or other such illegal conduct * * *," and was not intended to apply to the activities specified in the affidavits in support of the complaint in the case at bar. We are aware of no authority to the contrary.

Although count I of plaintiff's complaint also makes reference to and pleads acts and conduct alleged to be in violation of section 38—1 *et seq.* of the Criminal Code of 1961 (Ill. Rev. Stat., ch. 38, par. 38—1 *et seq.*), we conclude that said acts and conduct in and by themselves, if proven

---

[3] Statement of the Chicago Crime Commission on its proposed legislation, "Stopping The Operation of a Criminally Operated Business," (February 16, 1965).

would constitute the exercise of powers not conferred by law and that the statutory reference in plaintiff's complaint is unnecessary, superfluous, and does not affect the validity of the allegations seeking *quo warranto* relief. *People v. White Circle League of America* (1951), 408 Ill. 564, 97 N.E.2d 811.

For the reasons specified above, the trial court's order striking count II is affirmed. The trial court's order striking and dismissing count I is overruled, and this cause is remanded with directions that the defendant answer count I, and that a hearing on the issues raised thereon be had.

Order striking and dismissing count I overruled and cause remanded for hearing; order striking count II affirmed.

STAMOS and PERLIN, JJ., concur.

### SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE PUSATERI delivered the opinion of the court:

The defendants' first contention in their petition for rehearing makes an incorrect statement that the plaintiff State's Attorney alleged in his complaint the conclusion that Lincoln tows cars without the consent of the vehicle owner. We have again reviewed the complaint in the case at bar, and there is no such allegation. In that some of the subsequent questions posed by the defendants in the petition for rehearing are based on the premise of this inaccuracy, we do not address ourselves to these questions in this opinion.

Regarding defendants' request that this court amend its opinion to permit Lincoln to show on remand that the owners of the automobiles which it tows gave their consent to the imposition of a lien, we conclude that such a request is not well founded and cannot be granted. *Kunde v. Biddle* (4th Dist. 1976), 41 Ill. App. 3d 223, 353 N.E.2d 410; *Murrell v. Trio Towing Service, Inc.* (Fla. App. 1974), 294 So. 2d 331; *Younger v. Plunkett* (E.D. Pa. 1975), 395 F. Supp. 702.

We next address ourselves to defendants' contention that this court has erroneously assumed that Lincoln Towing does not have a possessory lien on the vehicles it tows; the aforementioned authorities also substantiate that the towing of an automobile from a private parking lot at the request of a person other than the owner or lawful possessor of the vehicle does not create a possessory lien against the vehicle.

The petition for rehearing states that this court's opinion appears to hold that any isolated incident of wrongful conduct would subject a

corporation to forfeiture of its franchise under the Quo Warranto Act. (Ill. Rev. Stat. 1973, ch. 112, par. 9 *et seq.*) In this regard it is to be noted that the original opinion lists the allegations of the eight affidavits submitted as exhibits and attached to the complaint, which allegations indicate a consistent course of tortious conduct over several years, a series of tortious incidents, and not any isolated tortious incident as being the wrongful conduct that would subject Lincoln to forfeiture of its franchise under the Quo Warranto Act (Ill. Rev. Stat. 1973, ch. 112, par. 9(e)). *People v. White Circle League* (1951), 408 Ill. 564, 97 N.E.2d 811.

Defendants' petition for rehearing makes an additional misstatement of fact when it states that the question of the power to fine the defendant corporation under the Quo Warranto Act (Ill. Rev. Stat. 1973, ch. 112, par. 14) was gratuitously injected as an issue and was not presented by plaintiff's complaint. The prayer for relief contained in count I of the complaint prayed for a court ordered ouster or a *fine.* (Emphasis added.)

Concerning defendants' contention that this court has failed to consider in its opinion the effect of the intervening ordinance of the City of Chicago regulating towing companies and the assumption of jurisdiction by the Illinois Commerce Commission, we conclude that the consideration of same would not and does not change the opinion of this court regarding the matters here in issue. *Kunde; Younger.*

Regarding defendants' contention that the court's opinion could be mistakenly interpreted to put the burden of proof upon the defendant, our courts have held that the People may call upon a corporation at any time to disclaim or justify the manner in which it transacts business (*People v. White Circle League* (1951), 408 Ill. 564, 97 N.E.2d 811; *People v. United Medical Service, Inc.* (1936), 362 Ill, 442, 200 N.E. 157), and the burden is upon the defendant in a *quo warranto* action to disclaim or justify its actions. *People ex rel. Ray v. Lewistown Community High School District No. 241* (1944), 388 Ill. 78, 57 N.E.2d 486; *People ex rel. Henderson v. Redfern* (4th Dist. 1966), 75 Ill. App. 2d 196, 220 N.E.2d 323.

We believe that the other contentions of the defendants in its petition for rehearing have been considered clearly and sufficiently in the original opinion. The petition for rehearing is denied and the finding of the original opinion is affirmed.

Petition for rehearing denied; judgment affirmed.

STAMOS and PERLIN, JJ., concur.