Nance B. HINMAN, Individually and on Behalf of all those similarly situated, Plaintiff-Appellant,

v.

LINCOLN TOWING SERVICE, INC., et al., Defendants-Appellees.

No. 84–2628.

United States Court of Appeals, Seventh Circuit.

Submitted May 22, 1985 *.

Decided Aug. 15, 1985.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice

provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). Plaintiff-appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record.

Daniel Galatzer, Lamet, Galatzer & Associates, Chicago, Ill., for plaintiff-appellant.

Jon W. Knudson, Edward P. O'Brien, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before WOOD, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

This litigation hinges on whether a commercial relocator's retention of a trespassing vehicle—removed from private property pursuant to a request from or contract with a private landowner—until it receives a money payment from the vehicle's owner, as permitted by Ill.Rev.Stat. ch. 95½ ¶ 18a–501 (1983), constitutes an act properly attributable to the State of Illinois. The district court found no state action and dismissed the complaint for failure to state a claim upon which it could grant relief. We affirm.

According to her complaint, the allegations of which we must accept as true, the plaintiff, Nance B. Hinman, on July 13, 1982, parked her car in the private parking lot of a grocery store. The store apparently had contracted with the defendant, Lincoln Towing Service, Inc. ("Lincoln"), a commercial relocator, to patrol its property and to remove any illegally parked vehicles, including those parked beyond the limited license granted them. When Hinman left the grocery store to shop at another nearby store, Lincoln towed her car to its impound lot. Despite her protests, Lincoln refused to return the car until she paid a $35 fee. Lincoln never expressly notified her that she could lodge a complaint with the Illinois Commerce Commission (the "Commission"), which regulates commercial relocators.

On March 9, 1983, Hinman filed this civil rights action against Lincoln, its owner Steve Mash, and the individual members of the Commission, on behalf of herself and all similarly situated persons who had had their vehicles towed by Lincoln on or after January 1, 1979. She sought a declaration that the Illinois act regulating commercial relocators, Ill.Rev.Stat. ch. 95½ ¶ 18a–100 *et seq.* (1983) (the "Act"), violates the Constitution because it fails to provide for a prior or prompt hearing on the propriety of the tow. She also sought to enjoin Lincoln from towing any vehicles without owner

consent until such a prior or prompt hearing is provided, and to recover damages, costs and fees. Finding no state action, the district court dismissed Hinman's action and this appeal followed.

■ Section 1983, the statute under which plaintiff sues, protects persons against "the deprivation of any rights, privileges, or immunities secured by the Constitution...." 42 U.S.C. § 1983. The Fourteenth Amendment of the Constitution forbids a State from depriving any person "of life, liberty, or property without due process of law." Hinman argues that the Act violates the due process clause because it fails to provide for a prior or prompt hearing on the correctness of the loss of a $35 fee or the loss of a vehicle's use in the event its owner refuses to pay the fee. But the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed.2d 1161 (1948). *See Blum v. Yaretsky*, 457 U.S. 991, 1002–03, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Civil Rights Cases*, 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed.2d 835 (1883). Adherence to this requirement of state action limits the reach of federal law and federal judicial power, and "avoids imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). Thus, we carefully scrutinize the conduct of Lincoln and Steve Mash to determine if, in all fairness, it can be attributed to the State.

■ "Fair attribution" first requires that some right or privilege created by the State cause the deprivation. *Id.* Hinman here satisfies this requirement since the Act creates the lien that permits commercial relocators to retain towed vehicles until their owners pay a fee. But fair attribution also requires that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.*

This prevents constitutional challenges to actions taken by private parties pursuant to the laws of a State but without active involvement of judicial process or state officials. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 160 n. 10, 98 S.Ct. 1729, 1735–36 n. 10, 56 L.Ed.2d 185 (1978).

■ Hinman does not contend that mere regulation of commercial relocators by the State transforms them into state actors. Indeed, the Supreme Court has repeatedly rejected similar arguments; fair attribution requires something more. *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754; *Jackson*, 419 U.S. at 350, 95 S.Ct. at 453. Hinman does, however, articulate several factors which, she says, viewed as a whole, provide the "something more" required. We disagree.

Hinman first argues that Illinois encourages, supports and makes inevitable the imposition of a lien. She notes that prior to the passage of the challenged Act in 1981, Illinois courts had held that commercial relocators could tow, but not impound, trespassing vehicles since the common-law did not grant them a right to impose a lien. *People ex rel. Carey v. Lincoln Towing Service, Inc.*, 54 Ill.App.3d 61, 11 Ill.Dec. 640, 369 N.E.2d 94 (1977); *Kunde v. Biddle*, 41 Ill.App.3d 223, 353 N.E.2d 410 (1976). Since, argues Hinman, the Act created a new legal relationship between vehicle owners and commercial relocators, the State "encourages and supports" the imposition of such liens. Moreover, the statutory framework makes imposition of the lien inevitable because that is the only way a licensed relocator can obtain money for its services.

■ We initially note that "encouragement, support, and inevitability" do not provide the precise criteria for finding a private individual to be a state actor; rather, the Supreme Court has indicated "that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum*,

457 U.S. at 1004, 102 S.Ct. at 2786 (citations omitted). *See also Flagg Bros.*, 436 U.S. at 164, 98 S.Ct. at 1737.

■ The gravamen of Hinman's argument is that a private decision to take advantage of an interest in property granted commercial relocators by statute, where that statute has redefined or reordered a previous allocation of interests or rights in the property, should be deemed a decision of the State for purposes of the Fourteenth Amendment. But a mere redefinition or reordering of property rights, without anything else, is not coercion or significant encouragement in the sense intended by the Supreme Court. The common-law, through judicial decisions and legislative enactments, is in a constant flux; many decisions and statutory schemes expand, modify or completely overturn property rights as previously understood. To hold that any judicial or legislative action contributing to that flux brands the private act taken pursuant to the change an act of the State would open up virtually the entire arena of private conduct to constitutional challenge. Such a result defeats the very purpose of imposing a state action requirement on suits filed under the due process clause.

■ In any event, we disagree with Hinman's characterization of the imposition of the lien as "inevitable." While the Act sets a limit on the charges a relocator can recover from vehicle owners, Ill.Rev.Stat. ch. 95½ ¶ 18a–300(12) (1983), and prevents a relocator from charging a private property owner with whom it has contracted other than as specified in their contract, Ill.Rev. Stat. ch. 95½ ¶ 18a–300(8) (1983), nothing mandates the relocator to charge a fee and exercise its lien. If, for example, the vehicle owner can convince the relocator that his or her car has been towed improperly, the relocator remains free to negotiate any settlement with the car owner. Such settlement could greatly benefit the relocator since the owner always can resort to state court for relief, both civil and criminal, from a wrongful taking. Ill.Rev.Stat. ch. 95½ ¶ 18a–303 (1983). Moreover, nothing prevents the relocator from contracting with a private property owner to remove trespassing vehicles for a fee that partially or fully compensates it for its services.[1]

■ Hinman next maintains that Lincoln's acts are fairly attributable to Illinois since Lincoln performs a public function when it decides who to tow, imposes liens and impounds vehicles, and collects fees. Such powers, she argues, have rested traditionally with the police and courts—both public institutions. State action can arise when a state delegates to a private party a power "traditionally exclusively reserved to the State." *Jackson*, 419 U.S. at 352, 95 S.Ct. at 454. *See also Flagg Bros.*, 436 U.S. at 157, 98 S.Ct. at 1734; *Rendell-Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982); *Blum*, 457 U.S. at 1011, 102 S.Ct. at 2789–90. But private property owners in Illinois who give appropriate notice have long had the right to remove by towing any unauthorized vehicles at the owner's expense. Ill.Rev.Stat. ch. 82 ¶ 47a (1983). The Act changed the status quo only to the extent that it created a lien in favor of relocators. The availability of and right to exercise state-created liens has never been an exclusive perogative of the State. In any event, "[t]hat a private entity performs a function which serves the public does not make its acts state action." *Rendell-Baker*, 457 U.S. at 842, 102 S.Ct. at 2772. Finding no state action, the district court properly dismissed defendants Lincoln and Steve Mash.[2]

---

**1.** We note, however, that relocators cannot pay private property owners for the right to tow illegally parked vehicles. 92 Ill.Adm.Code § 1710.40 (1984).

**2.** This holding does not conflict with *Lugar*, 457 U.S. 922, 102 S.Ct. 2744, which found state action in a creditor's resort to a facially valid state statute that permitted prejudgment attachment of a debtor's property through an *ex parte* court petition. In *Lugar*, a clerk of the state court issued a writ of attachment, which the county sheriff then executed. Such overt entwinement of state agents in the physical deprivation of constitutionally protected interests in property sufficiently colored the acts of the creditor to render them state actions. In our case, plaintiff

The district court also properly dismissed the individual members of the Commission. While the Commission members are clearly state actors, Hinman fails to raise a colorable claim against them on the merits. To the extent Hinman argues that Illinois was required to provide some kind of hearing to review the correctness of a tow once it created a lien in favor of relocators, we simply answer that Illinois has freedom to order the property rights of its citizens as it chooses, and does not have to provide vehicle owners—who can always resort to state courts for relief from conduct by a relocator that violates the common-law—with any process. The Constitution was designed as a charter of negative liberties; it generally does not impose any affirmative duty on federal or state governments to provide services or procedural protections to rights in property. *Cf. Benson v. Cady,* 761 F.2d 335, 339 (7th Cir.1985); *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1984); *Beard v. O'Neal,* 728 F.2d 894, 899 (7th Cir.1984); *Jackson v. City of Joliet,* 715 F.2d 1200, 1203 (7th Cir.1983); *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982). Under the circumstances of this case, the Constitution does not provide vehicle owners with a positive entitlement to a hearing of any kind.

The decision of the district court is

AFFIRMED.

does not allege state actors took any affirmative steps in promotion of the alleged deprivation—only that the Commission could receive and review complaints. Plaintiff does not allege that she ever sent the Commission a verified complaint. *See* Ill.Rev.Stat. ch. 95½ ¶ 18a–200(7) (1983). This absence of affirmative conduct by state actors also distinguishes our dispute from a line of cases finding private parties liable to suit for due process violations because of constitutionally defective state garnishment and prejudgment attachment procedures. *See Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).